## Hickman et al. *versus* Shimp.

By parol contract, A. agreed to furnish B. an engine and boiler, and guaranteed that they would pump water and hoist kaolin to the satisfaction of B., or else no sale. B. was to notify A. whether the machinery was satisfactory or not, but no time was specified within which the notice was to be given. A. agreed to allow B. a year's credit. A. put in the machinery, and after the pumping capacity had been tested, but before the hoisting power had been tried, B. made an assignment and transferred this property to his assignees, who sold it to C. B. never notified A. whether it was satisfactory or not. About two years after the machinery was furnished, it having been successfully operated by C. meantime, A. brought replevin for it against C. claiming that B. had never acquired title :

*Held*, that while the contract was conditional, being subject to the trial of the machinery and its approval, as conditions precedent to the passage of the title, yet as no time was fixed within which notice of B.'s approval was to be given, a reasonable time only would be implied ;

*Held, further*, that under the admitted terms of the contract, a reasonable time for the giving of such notice, would not extend beyond the year allowed for credit; and this, in connection with the facts, that B. transferred and delivered the property to his assignees, and that the engine and boiler had been successfully operated for nearly two years, without complaint, raised an implication of acceptance which was sufficient to complete the contract and pass the title.

February 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Chester county:* Of July Term, 1883, No. 130.

Replevin, by Henry E. Shimp against Wellington Hickman *et al.* to recover an engine and boiler.

On the trial, before FUTHEY, P. J., the following facts appeared: S. G. Willauer was the owner of certain real estate in

Chester county on which there was a deposit of kaolin, and in the latter part of the year 1879 he erected buildings and machinery on his property for the purpose of raising the said material. His engine and boiler proved too small, and in February, 1880, in a conversation had by Willauer with the plaintiff, Shimp, the latter agreed to furnish another engine and boiler suitable to do the work. As to the terms of this contract there was little or no dispute.

Plaintiff testified in regard to it as follows: "The engine and boiler were at Mount Joy, Lancaster county; I told him (Willauer) that I would put the engine and boiler there and guarantee that it would do the work, that is to pump the water and hoist the kaolin, and, if not, it would be no sale; I don't exactly know, but I think I told him I would charge him about $700 for the engine and boiler, without any other fixtures. . . . . . Q. Was there anything said about his accepting the engine, and when he was to do so? A. Yes, sir, it must do the work satisfactorily, and if it did not it was no sale. Q. What was said between you and Willauer? A. I told him that the engine must give satisfaction or it was no sale. Q. What did he say? A. He told me that it must pump the water and hoist the kaolin; I told him that if it did not do that it was no sale. Q. How were you to find that out? A. He was to let me know; we had the contract that I was to give him the engine on a year's credit."

Both parties agreed that Willauer was to notify Shimp whether or not the machinery was satisfactory, but no time was mentioned within which the notification was to be given.

The engine and boiler were sent by Shimp during the month of February, 1880, and put up under his direction. Shortly afterwards Willauer failed, making an assignment on March 31st. The pump was started before the assignment, but the hoisting apparatus not until afterwards. By Willauer's assignment the machinery was transferred to his assignees, who sold the same on February 18th, 1881, to Henry S. Hickman, from whom the defendants purchased it. The real estate also, was subsequently purchased by the latter, and the machinery kept in successful operation by them up to the time of bringing this suit, January 13th, 1882. Shimp was never notified whether the machinery was satisfactory or not.

The defendants asked the court to charge that under the evidence the verdict must be for them. The court reserved this point, and the jury found for the plaintiff. The court afterwards filed an opinion refusing the point reserved, and entered judgment on the verdict; whereupon the defendants took this writ assigning for error the refusal of their point.

*William B. Waddell* for plaintiffs in error.—Under the terms of the contract this was a sale on trial. In such a sale the mere failure to return the goods within the time specified for trial, makes the sale absolute: Benjamin on Sales, § 595 ; 1 Whar. on Contracts, § 590. Where no time is specified in advance, a reasonable time will be implied, within which it is the duty of the vendee to make known his disapproval, or else the sale will become complete : 5 Wait's Actions and Defences, ch. 119, § 16. A reasonable time in the present case, would have been within the year allowed for payment, but no notification was given within that period by Willauer or those claiming under him, and the sale became absolute : Dewey *v.* Erie, 2 Harris, 211.

*R. E. Monaghan* for defendant in error.—The contract of sale between Willauer and Shimp was subject to the condition precedent, that the machinery would both pump water and hoist kaolin, and the property remained in the vendor until tested : Story on Sales, § 247 ; Benjamin on Sales, § 320, and notes ; Becker *v.* Smith, 9. P. F. S. 472 ; Enlow *v.* Klein, 29 P. F. S. 488 ; Moore *v.* Laird, 1 Ches. Co. R. 529. The pumping only had been tried before Willauer made an assignment ; the lifting had not been tried and the assignment put it out of his power to complete the contract. Notice, also, was a condition precedent to the completion of the contract, and as no notice was given, the property remained in Shimp : Story on Sales, § 250 ; Benjamin on Sales, § 321 ; Hill *v.* Freeman, 3 Cush. 257.

Mr. Justice CLARK delivered the opinion of the court, March 30th, 1885.

This action of replevin was brought on the 13th January, 1882, by Henry E. Shimp, to recover an engine and boiler in the defendants' possession at Cedar Knoll, in Chester county. In the latter part of the year 1879 one S. G. Willauer was the owner of certain real property at the place named, containing a large deposit of kaolin, a variety of clay used in the manufacture of porcelain, and had erected thereon buildings and machinery for the mining of that material. The engine and boiler in dispute were, in February, 1880, set up in these works by Shimp, under an arrangement with Willauer. As to the terms of this arrangement there is little if any dispute. Shimp testifying on this subject, in substance, says :

" The engine and boiler were at Mount Joy, in Lancaster county. I told Willauer that I would put the engine and boiler there, and guarantee that it would do the work, that is, pump the water and hoist the kaolin, and if not it would be

no sale; that the engine must give satisfaction. I think I told him I would charge $700; not over $800; not positive about that. He told me he was not very flush of money; I told him that the engine was not doing me any good, and I would give him a year's credit, if satisfactory." After the contract had been concluded Mr. George McFarland, an employee at the works, was called to witness its terms. Mr. Willauer, in the presence of this witness, said to Shimp: "I want you to say, before Mr. McFarland, the same as you do to me about this machinery." Mr. Shimp replied: "I promised the Major that I would place all this machinery in first class running order, complete, for $700, he to pay me in one year's time if satisfactory." He then said, "Is that all, gentlemen?" and they replying it was, he returned to his work.

Both parties testify that Willauer was to notify Shimp whether or not the machinery was satisfactory, but no time was specifically mentioned within which this was to be done. The engine and boiler were, in the same month, removed to the works, and Joshua Bently was by Shimp employed to set them in place. Soon as this was completed they were put to work, and from that time to the bringing of this suit they have been successfully operated in the mines. On the 31st day of March, 1880, Willauer made an assignment for the benefit of his creditors, and on the 18th day of February, 1881, the boiler and engine were sold by his assignees to Henry S. Hickman, from whom the defendants, the subsequent owners and operators of the mines, purchased them.

The contract was a conditional one. It provided for subjection of the engine to trial, and became absolute only on approval; but such a contract created a condition which must be satisfied before the promise it qualifies becomes effectual. It is, therefore, a condition precedent, and the title will not pass until the option is determined. In this respect it differs from what is denominated among merchants "a sale and return," which creates a condition subsequent merely, and passes the title at once, subject to the right to rescind and return: Hunt v. Wyman, 100 Mass., 198; Wharton on Contracts, 590; Benjamin on Sales, 791.

In the event of disapproval, the vendor is entitled to receive notice; if a time be specified within which the option is to be exercised, the buyer has the full period agreed upon to give that notice, but no more; if none be fixed, a reasonable time is implied. In either case, however, it is the duty of the buyer, if he disapprove, to make his disapproval known to the seller in due season, or the contract will become binding upon him by the resolution of the condition: 5 Wait's Act.

and Def., 552. What is a reasonable time, where the facts are ascertained, is ordinarily a question of law for the court, to be determined upon a consideration of all the circumstances; where, however, the facts are not clearly established, or where the question depends upon other controverted matters it is, under proper instruction, for the jury. The buyer's approval may, therefore, be implied from mere neglect to notify, or from any act or course of conduct, in relation to the property, which necessarily involves an unequivocal assertion of his absolute ownership; as, if he should sell it to another, or pledge it for the payment of his own debt. The same condition of facts, which will hold the buyer, in an action against him for the price, will establish his title in a replevin for the property.

In the case at bar, under the instruction of the court, the jury found that no actual notice of Willauer's approval had at any time been given to Shimp; but, as we have said, his acceptance may be implied from his conduct, in the absence of actual notice. It is admitted that on the 31st day of March, 1880, Willauer made a general assignment of his property for creditors; that, assuming to own the engine and boiler he had passed them over to his assignees, who took possession of them, completed the attachments for hoisting, and operated the engine and boiler in the work of the mine, pumping water and hoisting kaolin continuously and successfully until the sale in February, 1881. Whether, in the interim, upon notice of Willauer's insolvency, Shimp might have removed them, we are not called upon to decide. Although the jury has found that he was in no default, it is admitted that he did not remove them, and that he made no offer to do so. On the contrary, a month or more after the assignment, and when the engine and boiler were in the possession of the assignee, he was at the works to adjust the pump or water gauge, or by proper repairs to add to the efficiency of the machinery. It was not until the long period of credit had about expired that he gave any notice of his claim, or set up any title whatever. At the sale in February, 1881, the property was sold by the assignees and purchased by the present defendants, who have ever since held it in their possession, claiming, using, and operating it as their own; and although the period of credit had, at the institution of this suit, altogether expired, no word of dissatisfaction or disapproval had at any time been expressed either by Willauer, or his assignees, or the defendants; and an implication, without doubt, fairly arises from the contract, as proven or admitted, that, in contemplation of the parties, the time for notice of approval could not reach beyond this period of credit.

[Hickman *v.* Shimp.]

If this were an action by Shimp against Willauer for the price, we think that, under the admitted facts of this case, his right to recover could not be denied. He might well complain if, after the transfer and delivery of the engine and boiler by Willauer to his assignee for creditors, and the lapse of a whole year, during which time the engine and boiler were kept in constant operation, without a word of complaint or dissatisfaction, Willauer should be permitted to defend upon the ground that he had never formally expressed his satisfaction. From the terms of the contract, taken with the admitted facts, an implication of acceptance fairly arises, and that implication being raised, the property is in the buyer, even though the seller may wish to retain it. The case of Dewey *v.* Erie Borough, 2 Harris, 211, is very similar in all respects. The defendant in that case gave a note for the price of a town clock, payable in one year, " conditioned, however, that the said clock perform to the satisfaction," &c. The suit was upon the note, and it was shown that the clock was not satisfactory. Chief Justice GIBSON, delivering the opinion of the court, says: " The defendant promised to pay the price at the expiration of a year, on condition that the clock should perform to the satisfaction of the burgess and town council, or their successors. The corporation, consequently, had a year to signify its determination. . . . . . The burgess and council were ultimately dissatisfied with it, and, after two years, took it down, but did not offer to return it, or attempt to give notice of their dissatisfaction. . . . . . It is clear and indisputable law that the burgess and council were bound to give notice of their dissatisfaction, with an offer to return the clock, or attempt to do it. . . . . . But there was not a spark of evidence to prove that any effort had been made whatever, and the contract had become absolute."

The facts of this case, so far as they are material to the determination of the questions involved, are in no way controverted, but are clearly established, and we are of opinion that the court should have instructed the jury that under the evidence the plaintiff was not entitled to recover.

The judgment is therefore reversed.