## JOHN T. HADFIELD ET AL.

### v.

## CYRUS L. BERRY.

*Sales—Bailment—Conditional Sales—Trover—Evidence.*

1. Where goods are sold for a stipulated price with the privilege of returning what remains unsold, or where it is agreed that the same may be paid for by a stipulated time or returned in good condition, such sale, as to third parties without notice, is valid.

2. Where the consignee is at liberty to sell and receive payment at any price he likes, but is bound, if he sells the goods, to pay for them at a fixed price and time, the transaction is a sale.

3. In the case presented, the goods in question were liable to be levied upon as the property of the vendee.

[Opinion filed December 8, 1888.]

Hadfield v. Berry.

In error to the Circuit Court of Peoria County; the Hon. T. M. Shaw, Judge, presiding

Messrs. McCulloch & McCulloch, for plaintiffs in error.

This is not the case of a conditional sale, where an attempt is made to retain title in the seller until the price is paid. It is simply a bailment of goods with power to sell, and an obligation to return all unsold goods at a certain day. Nor is it a case of "sale or return." Such contracts seem to stand upon the ground that the property is delivered upon the condition that unless returned within a time certain, or within a reasonable time, the seller has a right to treat the sale as absolute. In the meantime the property remains in the seller until he makes his election. Hilliard on Sales, p. 20, Sec. 3; Benjamin on Sales, Secs. 597–9; Hunt v. Wyman, 100 Mass. 198.

The case of Meldrum v. Snow, 9 Pick. 441, is directly in point. A brewer supplied a retailer with a large quantity of beer in the winter time, the retailer to pay for all he should sell during the season, loss by casualty to fall upon the brewer; and if any beer remained unsold at the end of the season, the retailer had the right to return it to the brewer, but the latter had no right to take it without his consent. Payments to be made semi-annually; profits went to the retailer and all losses by bad debts to fall upon him. In a suit between the brewer and attaching creditors it was held that the brewer was still the owner. And it was held that it made no difference that it was optional with the retailer to return or not. Citing Blood v. Palmer, 2 Fairfield, 414; Whitewell v. Vincent, 4 Pick. 452, n.; Long on Sales, 181, 199, 2000; Sargent v. Giles, 8 N. H. 325; Ayers v. Bartlett, 9 Pick. 159.

The case of Moss v. Stone, 5 Barb. 516, was replevin by the alleged seller against an officer making a levy on a stock of goods received by the debtor " as per bill  *  *  *  to sell and account for the amount of $293.86, or return in as good condition as when taken." This was held to be a bailment and not a sale.

In Boston and Maine R. R. Co. v. Warrior Mower Company, 76 Maine, 251, Dunham had received machines to be

sold at certain prices of which he was to have a certain share for commission, the Mower Company to retain title until sold. This was held to be a bailment and not a sale.

In the Weir Plow Co. v. Porter, 82 Mo. 23, goods were consigned for sale under a special contract to return those not sold, or to settle for the same by note, as the company might decide. This was held to be a bailment and not a sale.

In the Nevill case, cited in Benjamin on Sales, *supra*, which was held to be a case of " Sale or return," it was decided that the title to the goods passed to Nevill " as soon as he, by his sale, had put it out of his power to return them." This carries with it an implication that until then the title remained in Towle & Co., from whom he had received them.

The principle deducible from these decisions is that where goods are consigned for sale, all unsold goods to be returned at a certain time, the title remains in the consignor until it is transferred to a purchaser by the authorized act of the consignee. When goods are delivered upon a " sale or return " contract, the title remains in the proposed seller until, by reason of the default of the other to return in due season, he has elected to treat the sale as absolute.

There is a wide distinction between both classes of cases first mentioned and those where all forms of a sale have been gone through with and the seller attempts to retain title as security for the price. Any such attempt is in direct conflict with our chattel mortgage law, and therefore void.

Messrs. STEVENS, LEE & HORTON, for defendant in error.

Beginning with the case of Brundage v. Camp, 21 Ill. 330 and even earlier, the decisions of this State have been uniform upon this question of sales of personal property, and the doctrine laid down in that case is, that where all the forms of a sale have been gone through with, and a delivery made, a purchaser from the first purchaser would take title, although the conditions of the first sale had not been complied with In the case of Murch v. Wright, 46 Ill. 487, this doctrine is reiterated.

In the case of Lonergan v. Stewart, 55 Ill. 44, the court held that when the identical thing delivered was to be returned,

although in an altered form, it was a bailment; but when there was no obligation to restore the specific article, and the receiver was at liberty to return any other thing of equal value, he became debtor to make the return, and the title to the property was changed. That is, it was a sale.

Now, in the case under consideration, there is no claim that Koch Brothers were ever to return all those goods. The utmost that could be insisted upon is that they were to return such as were not sold, or store them. . They had a right to return money in place of the goods, and under the language of this last decision, having that right to return the money, the transaction must be considered a sale.

We call the attention of the court specially to the case of Bastress et al. v. Chickering, 18 Ill. App. 198, and cases there cited, upon this question of an absolute sale. In the opinion, the court says: "The cases cited are authority for the doctrine, that where one party, by means of a contract, but without notice to the world, suffers the real ownership in chattels to be in himself, and the ostensible ownership to be in another, the law will postpone the rights of the former to those of the execution or attachment creditors of the latter, because to injure third persons by giving a false credit to such ostensible owners is the natural and probable result of the transaction."

LACEY, P. J. This was an action in trover commenced by the plaintiffs in error against the defendant in error in the Circuit Court of Peoria county, charging him with having converted to his own use a quantity of what is known as "Standard Fireworks," claimed to have been the property of the plaintiffs in error. The defendant in error was the sheriff of Peoria county, and by virtue of an execution issued in favor of a judgment and execution creditor of Koch Brothers, levied on the goods in question as the property of said judgment debtors, and afterward sold the same, amounting to some $1,100 or $1,200, to satisfy such execution. The question involved here is whether the fireworks were the property of Koch Brothers, so as to be liable to be seized by their creditors, or were the property of the plaintiffs in error. The

Koch Brothers, in 1886, were retail dealers in Peoria, in toys, fancy goods and fireworks, and had been in such trade about four years, and the plaintiffs in error were at the same time engaged as manufacturers and dealers in fireworks at Middletown, Connecticut, and New York City.

The goods were furnished by the latter to the former for sale under a certain contract or arrangement between them; and upon the nature of that contract, whether Koch Brothers were the mere agents or bailees of appellants, or the purchasers of the goods in such a way as to make them liable to seizure on execution as their property, depends the right of the plaintiffs in error to recover. The court below tried the case without a jury, and found in favor of the defendant in error, holding that, as against the judgment creditors, the property was that of Koch Brothers, and gave judgment against plaintiff in error for costs. From this judgment this appeal is taken. Counsel for plaintiffs in error insist that Koch Brothers were the mere bailees of the said goods, and that they were the legal owners, and that the same could not be seized and held as the property of Koch Brothers.

The decision of this case involves a consideration of the law applicable to conditional sales where the rights of third parties become involved, as well as the real nature of the contract between appellants and Koch Brothers. However the law may be in other States, in this State it is well settled that where property is sold and delivered by the vendor to the vendee it makes no difference what condition may be attached to such sale for the security of the purchase price, either by reserving a lien on the thing sold, or providing that the title shall remain in the vendor till the property is paid for, or condition of forfeiture for non-compliance with the terms of sale; as to innocent purchasers without notice and execution creditors, the absolute title in the property passes to the vendee, and all such conditions are void under our chattel mortgage act. Brundage v. Camp, 21 Ill. 330; Murch v. Wright, 46 Ill. 487; Lonergan v. Stewart, 55 Ill. 44; Bastress v. Chickering, 18 Ill. App. 198. The conditions and agreement, however, remain valid as between the parties themselves.

Hadfield v. Berry.

Where property is sold for a stipulated price with the priv-ilege to return the unsold portion, or sold to be paid for by a stipulated time or returned in good condition, the sale as to third parties who purchase without notice, is valid.    Warder v. Hoover, 51 Ia. 491; Martin v. Adams, 104 Mass. 262; Kinney v. Brodlee, 117 Mass. 321; Robinson v. Fairbanks, 23 Reporter, 521.

There is no complaint by the plaintiff in error but that the court held the law for him as favorably as he could desire, but that the court found the facts against him contrary to the weight of the evidence. The propositions asked by the plaintiff in error to be held for them, which were refused, were properly rejected. First, the court was asked to find for plaintiffs in error on portions of the evidence, and then all the evidence, which was simply asking the court to pass on ques-tions of fact which the law does not require the judge to do in that form; second, the plaintiffs in error got the benefit of the law as favorably as they could ask. The court held in substance that the law was, if the goods were held by Koch Brothers, as bailees of plaintiffs in error, then they should recover; but the court found from the facts that they did not so hold the goods. If we understand the contention of coun-sel for plaintiffs in error, it is that the nature of the contract between Koch Brothers and them as to the fireworks was, that the goods were to remain with the latter as the goods of plaintiffs in error, subject to be sold by Koch Brothers, until July 10th, when the portion remaining unsold was to be returned to them either at the factory or by storing them in Peoria; that at no time did Koch Brothers, either before or after the 10th day of July, have the option to pay for the goods in cash, or return them and cancel the debt. That the contract was to pay for only such of the goods as they might sell, and no debt was created for the "unsold residue." The plaintiffs in error attempt to support their claim by the evi-dence of Charles B. Bidwell, and of the plaintiffs in error and John B. Kennedy, Jr., their agent. But all the evidence and circumstances should be taken together in determining the real character of the transaction. What we must now deter-

mine is, was there evidence from which the court below could properly find that the arrangement about the fireworks was a sale within the meaning of the law.

It appears from the evidence that Koch Brothers had been dealing with plaintiffs in error concerning their fireworks in a similar manner since 1884. They show a letter from John B. Kennedy, Jr., dated April 7, 1884, to Koch Brothers, in which he was making propositions to them in behalf of his principals to handle the fireworks, and in pursuance of which they did handle them in 1884 and 1885, which reads as follows: "The proposition made by me and sanctioned by H. & B. was that you return any goods you have left, if you wish, at no expense to us, and ten per cent. reduction on the invoice of those returned to pay for putting them in merchantable shape again. * * * We give our fireworks to nobody with the privilege of returning except on terms herein, and have but few accounts of that nature." August Koch testifies that his firm purchased goods under the terms of the letter in 1884 and in 1885, but not exactly on the same terms in 1886. He says: "The point of difference was that we were not expected to return the goods as we had been in the habit of doing, but were to keep them stored until further orders. Our agreement had no particular reference to this letter; don't know that it was thought of. It was simply a continuation of the arrangement we had with this difference: being in previous years compelled to return the goods after the fourth of July, in this year we were not compelled to do that, if we chose to keep them here. * * * We did not keep any separate account of the goods sold by us, but then we knew what goods of theirs were sold right along. * * * Hadfield & Bidwell were credited on our books with the goods we got of them. * * * We sold some fireworks on credit and they were charged in the usual way we charged other goods. * * * We used the money in connection with our own business. We could sell the goods at any price we saw fit above or below the invoice price."

It appears that the goods were billed to Koch Brothers at ten per cent. less than wholesale value; that Koch Brothers paid all freight.

Hadfield v. Berry.

Now, it is shown by the deposition of plaintiff in error, Hadfield, that the arrangement to furnish goods to Koch Brothers in 1883 was made through John B. Kennedy, Jr., "to act as agents of Hadfield & Bidwell and sell for our account such consignment of fireworks as they might order from time to time with settlement July 10, 1886, for all goods sold at that time with privilege of returning remainder unsold to Hadfield & Bidwell, or holding them subject to our order." The contract was made according to explicit instructions, "given to him to that effect." The testimony of Kennedy as to the contract as regards returning the goods was that they "were to be returned to the factory of Hadfield & Bidwell free of expense to H. & B., or held for them in Peoria, subject to their order. The agreement I made in 1886 had no reference to any former agreement."

It seems to us that there was ample testimony from which the court below could find that this was a sale of the goods with the privilege to pay for them as to the unsold portion in the goods themselves. Mr. Hadfield himself states that Koch Brothers had the privilege to return them, not that they were compelled to do so. The letter of 1884 expressly makes the return optional and there was ample testimony from which to find that the old arrangement as to that point remained in force, in 1886. If that be the case the title of the goods was in Koch Brothers from the time they were delivered till July 10, 1886, at a stipulated price which was named in the bills sent with the goods with an option on July 10, 1886, either to pay for the goods at that price in cash or return them.

The goods were levied on before the 10th of July and before any return. In our opinion the evidence sustains the finding of the judge that the property was sold for cash, with the right to return the unsold portion. Warder v. Hoover, 51 Ia., *supra;* Robinson v. Fairbanks, 23 Reporter, 521. In the latter case it is said, on the facts similar to the facts here: "In our judgment the contract was not a bailment or a sale on trial or approval in which there is no sale until approval is given expressly or by implication; but it more nearly resembles a contract or bargain of sale or return, which vests the

property in the goods, or so much of them as remained on hand at a fixed day in the future. . This day is stated to be January 1, 1886. Until then Ruston & Company had an unquestionable right to sell the goods for cash, on credit or in satisfaction of their antecedent debts, and even after such date, the goods unsold and on hand were theirs, with an option to return them to plaintiffs, which is nothing more nor less than a mere privilege to rescind the sale."

Benjamin, in his work on Sales, Sec. 598, commenting on *Ex parte* White, says : "But if the consignee is at liberty to sell at any price he likes, and receive payment at any price he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed price and a fixed time, in my opinion, whatever the parties may think, the relation is not that of principal and agent, and in point of law the alleged agent in such a case is making on his own account a purchase from his alleged principal, and is again reselling."

These remarks are particularly apposite to the facts in the case at bar. Koch Brothers had full and absolute control of the sale of the goods as much as if the sale, if it be a sale, had no conditions.

They sold the goods on the market for cash or on credit the same as their other goods, kept no separate books, but used the proceeds of such sales in their general business, without any restrictions from plaintiffs in error. All that plaintiffs in error had for security for the goods sold was the individual responsibility of Koch Brothers. We can not doubt but that, in view of the law and from the evidence, the court below was fully justified in finding the issues for defendant in error. The judgment is, therefore, affirmed.

*Judgment affirmed.*