## Etna Manufacturing Company v. Enos, Appellant.

*Contract—Sale—Condition—Test—Waiver—Question for jury.*

Where an engine is sold on condition that it shall be tested and if unsatisfactory returned to the vendor, and the engine is delivered to the vendee, and remains in the latter's possession for five months, without any test having been demanded, and is then levied upon as the property of the vendee, the question, on an issue between the vendor and the execution credi-

394 ETNA MANUFACTURING CO. *v.* ENOS, Appellant.

tor, as to whether the vendee had waived the condition as to a test and accepted the property, is a question,for the determination of a jury.

Argued May 15, 1906. Appeal, No. 111, April T., 1906, by defendant, from judgment of C. P. Butler Co., March T., 1905, No 2, on verdict for plaintiff in case of Etna Manufacturing Company v. Enos & Co. for use. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Issue to determine title to an engine. Before GALBREATH, P. J.

The court charged in part as follows:

[Where by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent.] [6]

[So that we may accept it as being the law that where an article is sold upon trial, that is, that the purchaser shall try it, or something is to be done by the seller before it is to be accepted by the purchaser or the money paid, in that event the title does not pass until that trial and acceptance have taken place and the money paid in accordance with it. That I think is still the rule of law in this state.] [7]

[You wish to buy and someone wishes to sell you a reaping machine; you wish to know that it will work satisfactorily; the seller says that he is willing to sell the machine, put it together and start it going and if it works satisfactorily to you and you accept it, that you will then pay him the price agreed upon; in that event he brings the reaper to your farm; it does not become your property and subject to the payment of your debts or to be taken on execution the moment it is set on your farm, but under the law it is still the property of the vendor, the man who sells the machine, until such time as he has set it up and started it going and it proves acceptable and you pay the money pursuant to that acceptance; up till that time it is

the property of the vendor and could be taken for his debts, but not yours.] [8]

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were (6, 7, 8) above intructions, quoting them, and (9) in directing a verdict for plaintiff.

*H. H. Goucher, F. J. Forquer* and *Williams & Mitchell*, for appellant.—The case was for the jury: Brunswick & Balke Co. v. Hoover, 95 Pa. 508; Martin v. Mathiot, 14 Serg. & Rawle, 214.

In sales on trial the mere failure to return the goods within the time specified makes the sale absolute: Dewey v. Erie Borough, 14 Pa. 211; Butler v. School District, 149 Pa. 351; Stutz v. Coal & Coke Co., 131 Pa. 267.

*T. C. Campbell*, with him *N. C. McCullough*, for appellee.— A sale is an executed contract: it vests the property in the thing sold in the buyer; but when the contract remains executory, there is no sale: Welsh v. Bell, 32 Pa. 12; Edwards's App., 105 Pa. 103.

The contract in this case was upon condition precedent, that is, that the engine should be satisfactory to the purchaser after test made by the vendor, and hence the title did not pass: Hickman v. Shimp, 109 Pa. 16; Goss Printing Press Co. v. Jordan, 171 Pa. 474; Logan v. Smith, 8 W. N. C. 102; Hand v. Matthews, 208 Pa. 149.

OPINION BY MORRISON, J., June 30, 1906:

This is a feigned issue to try the title to a certain Bessemer gas engine and fittings which the Etna Manufacturing Company, plaintiff, sold and delivered on May 23, 1904, to the McGuire Metallic Vacuum Casket Company, incorporated. The purchase price of the engine and fittings agreed upon between the parties was $250; and this amount was charged on the books of the plaintiff company against the vendee without any condition whatever appearing in the charge.   On October 18, 1904, a writ of fieri facias was issued out of the court of common pleas of Butler county on a judgment in favor of W. B. Enos and Company and against the McGuire Metallic

Vacuum Casket Company and placed in the hands of the sheriff on that day; and the said gas engine and fittings were levied upon by the sheriff on October 27, 1904, and advertised for sale on November 4, 1904. It will be observed at once that the question for trial in this issue is whether the title to the property in question was vested in the McGuire company so that it was liable to be sold on said execution.

The plaintiff's declaration states that " the Etna Manufacturing Company, Limited, is the sole owner of the above-named engine ; that a conditional sale of said engine was made to the McGuire Metallic Vacuum Casket Company, the conditions of said sale being as follows : Said Etna Manufacturing Company, Limited, agreed to take to the plant of the McGuire Metallic Vacuum Casket Company said engine, set it up and start it, and if it worked to the satisfaction of the McGuire Metallic Vacuum Casket Company they were to accept said engine and pay the said Etna Manufacturing Company, Limited, $250 for the same."

At the trial of the issue the plaintiff offered in evidence the statement of F. W. Chattin, in this case to be accepted as testimony, by consent: " Gas engine was bought by P. J. Mc-Guire for the McGuire Metallic Vacuum Casket Company about one year ago from E. P. Daubenspeck, agent for the Etna Manufacturing Company. I was present and heard bargain made between Mr. McGuire and Mr. Daubenspeck. The conditions of the sale were that the Etna Manufacturing Company were to deliver said engine to the McGuire Metallic Vacuum Casket Company, which delivery was made about May, 1904, and started running ·at their direction, and if it ran satisfactorily to said casket company they were to pay the sum of $250 for the same." Mr. Chattin also testified : ' We agreed to take the engine out for $250; they were to place it on the block and after it was placed on the block we were to go and start the engine ; if it ran satisfactorily they were to pay us $250, and if it didn't run satisfactorily, we were to have the engine back. Q. Satisfactory to whom ? A. To the McGuire Metallic Vacuum Casket Company. Q. They were to put it on the block; and who was to make the connection ? A. We were to make the connections. Q. And start it up ? A. Yes, sir. Q. And if it ran satisfactorily to them they were to take

it and pay $250?    A. Yes, sir.    Q. Was it ever put on the
block?    A. No, they never put it on the block.    Q. Did you
ask them at any time to put it on the block?    A. Yes, sir, we
did; it stood out there for several weeks and we asked them
to put it on the block different times.    Q. But it was never
done?    A. No, sir.    Q. And accordingly you never made the
connections?    A. No, sir.    Q. And never ran it?    A. Never
started the engine.    Q. Did they ever pay you any part of the
$250?    A. No, sir."

In this connection it should be noted that the sheriff testified
that when he levied on the engine it was set upon the block;
so there is a dispute of fact between the parties as to whether
or not the vendee placed the engine upon the block as agreed.

It thus clearly appears that the plaintiff sold the engine and
charged upon its books the price thereof, without condition ap-
pearing upon the books, and that the condition as to the set-
ting up and starting the engine was for the benefit of the Mc-
Guire Metallic Vacuum Casket Company.    It also appears
from the plaintiff's own testimony that it was ready to start
and test the engine and offered to do so several times, but the
casket company was not ready to have the test made.    It
further appears that the engine remained in the possession of
the casket company for a period of about five months, without
any effort on its part to have the engine tested, and during all
that time no effort whatever was made, on the part of the
plaintiff, to reclaim its engine, nor did it give any notice of an
intention so to do, until after the Enos and Company execution
was a lien upon the engine and fittings.

In our opinion, upon this state of facts, it was manifest error
for the learned court below to instruct the jury to find a verdict
in favor of the plaintiff.    We think this comes very near being
a case where the court might direct a verdict in favor of the
defendant, but upon careful consideration we incline to the
opinion that, upon the evidence as it appears in the record,
there was a question of fact to be passed upon by the jury.
We think the inference can fairly be drawn, from the evidence,
that so far as the plaintiff is concerned, the sale was absolute
and upon credit, subject only to the acceptance by the casket
company on the setting up and testing of the engine.    We are
further of the opinion that a jury might infer from the evidence

that the casket company waived the setting up and testing of the engine by its delay during the period of five months, according to the plaintiff's testimony, to put the engine upon the block in condition to have the test made.   Now during all this period it does not appear that the casket company gave any notice indicating that it did not intend to accept the engine.

Upon the facts in this record there can be little, if any, doubt that in an action by the plaintiff against the casket company for the purchase price of the engine and fittings, brought five months after the delivery, it would have been a question for the jury as to whether the casket company had waived the testing and had accepted the property.   If this is so, we cannot see how an execution creditor of the casket company would be in any worse position than the plaintiff.   It is clear beyond question that the sale was a conditional one and it was either on condition precedent or subsequent.

In  Hickman v. Shimp, 109 Pa. 16, we have a case much like the one at bar.   There the contract was as follows : " The engine and boiler were at Mt. Joy in Lancaster County.   I told Willauer that I would put the engine and boiler there and guarantee that it would do the work, that is, pump the water and hoist the kaolin, and if not it would be no sale ; that the engine must give satisfaction.   I think I told him I would charge $700, not over $800 ; not positive about that."   In that case there was no time fixed within which notice of approval or acceptance was to be given, and in that respect it is precisely like the case at bar.   In that case Willauer made an assignment for the benefit of his creditors, and on February 18, 1881, the boiler and engine were sold by his assignees to Henry S. Hickman, from whom the defendants, the subsequent owners and operators of the mines, purchased them.   In that case the verdict and judgment was in favor of Shimp, who sold the engine and boiler to Willauer, but the judgment was reversed by the Supreme Court.   In the opinion by Mr. Justice CLARK we find the following : " The contract was a conditional one.   It provided for subjection of the engine to trial, and became absolute only on approval ; but such a contract created a condition which must be satisfied before the promise it qualifies becomes effectual.   It is, therefore, a condition precedent, and the title will not pass until the option is determined.   In this

respect it differs from what is denominated among merchants
'a sale and return,' which creates a condition subsequent
merely, and passes the title at once, subject to the right to re-
scind and return : Hunt v. Wyman, 100 Mass. 198; Wharton
on Contracts, 590 ; Benjamin on Sales, 791."

"In the event of disapproval, the vendor is entitled to re-
ceive notice ; if a time be specified within which the option is
to be exercised, the buyer has the full period agreed upon to
give that notice, but no more; if none be fixed, a reasonable
time is implied.   In either case, however, it is the duty of the
buyer, if he disapprove, to make his disapproval known to the
seller in due season, or the contract will become binding upon
him by the resolution of the condition : 5 Wait's Act. and Def.
552.   What is a reasonable time, where the facts are ascertained,
is ordinarily a question of law for the court, to be determined
upon a consideration of all the circumstances ; where, however,
the facts are not clearly established, or where the question de-
pends upon other controverted matters, it is, under proper in-
struction, for the jury.   The buyer's approval may, therefore,
be implied from mere neglect to notify, or from any act or
course of conduct, in relation to the property, which necessarily
involves an unequivocal assertion of his absolute ownership ;
as, if he should sell it to another, or pledge it for the payment of
his own debts.   The same condition of facts, which will hold
the buyer, in an action against him for the price, will establish
his title in a replevin for the property."

In Goss Printing Press Company v. Jordan, 171 Pa. 474,
we find in the opinion of the Supreme Court, by Mr. Justice
MITCHELL, the following :

"Delivery does not consist in the mere transfer of location
or custody of property.   There must be the mind of both par-
ties concurring in the transfer in accordance with the contract,
the intent of one to deliver and the other to receive. . . . In
order to make a sale which is conditional as to the parties, ab-
solute as to creditors, there must be a delivery of the goods in
pursuance of the contract, for without this there can be no
present sale, and an agreement of sale without an accompany-
ing transfer, amounts to nothing more than a contract to sell at
a future time, or upon the fulfillment of stipulated conditions.
Furthermore, the delivery of possession alone, though a mate-

rial indicium of ownership, does not of itself constitute a sale, for the goods may be delivered in bailment, as in loan for hiring. There must, in addition to the possession, be at least such a conditional or qualified title passed to the buyer as to give him a transferable interest in the chattels: Edwards's App., 105 Pa. 103."

In the case at bar we think the contract amounted to a sale on condition precedent, and that no such conditional or qualified title passed to the buyer, at the time of the delivery of the engine and fittings, as to give it a transferable interest therein, nor would it authorize levying upon the property as that of the buyer until something had transpired indicating a compliance with the condition precedent, or a waiver of it by the parties. And right here is the turning point in the present case; and the evidence not being in writing, not undisputed, and no time fixed in the contract when the test should be made and the property accepted or rejected, the question of whether an unreasonable time had been allowed to elapse before the plaintiff undertook to reclaim the property, and whether the casket company had waived the test and accepted the property, ought to have been submitted, under proper instructions, to the jury.

It is so well settled in this state that a sale and delivery of personal property with a condition subsequent that the title will not pass until the buyer makes payment, vests such conditional title in the vendee that it may be levied upon and sold as his property, that it is unnecessary to cite authorities on that question.

It is argued by the appellee that the engine and fittings were held by the casket company under a bailment. But we are clearly of the opinion that the evidence does not establish a bailment. No rental was reserved; no contract for a return of the property and none implied unless it proved unsatisfactory on test, and we think it falls far short of a bailment: Painter v. Snyder, 22 Pa. Superior Ct. 603.

We do not sustain the first, second, third, fourth and fifth assignments. Under the evidence in this case, we do not approve of the instructions contained in the sixth, seventh and eighth assignments, because they entirely ignore the rule of law that the condition precedent may have been waived by the

parties and the property accepted by the vendee, as indicated by the lapse of time and the other circumstances in the evidence. So much of the ninth assignment as directed a verdict for the plaintiff is sustained and the judgment is reversed with a v. f. d. n.