In re LANDIS.

(District Court, E. D. Pennsylvania. March 5, 1907.)

No. 2,338.

1. BANKRUPTCY—POWERS OF COURT—COMPELLING RETURN OF PROPERTY.

A court of bankruptcy has jurisdiction by a summary order to compel the return of property forcibly taken from the possession of its receiver or a trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 447.]

2. SAME—RECOVERY OF PROPERTY—CONTRACT FOR SALE OR RETURN.

Where a pair of horses were delivered to a bankrupt a few days prior to his bankruptcy under an agreement for their sale to him at a stated price, but subject to his right to return them if not satisfactory after trial, and

he, in fact, never tried them, but they remained in his possession and passed to his receiver in bankruptcy, the transaction was one of sale or return by which, under the American rule, the title passed to the bankrupt subject to be divested if the option to return should be exercised, and the seller could not reclaim the property.

In Bankruptcy. On certificate from referee.

Joseph R. Dickinson, for trustee.
Rieser & Schaffer, for claimant.

J. B. McPHERSON, District Judge. The undisputed facts appear in the following extract from the referee's certificate:

"On Tuesday August 22, 1905, Landis saw Cleaver in Reading, and said he needed a pair of horses. Quoting from the testimony of Cleaver, he replied: 'I have just the horses for you. I sell them on good faith, and, if you buy the horses, if you want them, you can take them and try them, and, if they do not prove satisfactory to you, you are not supposed to keep the horses.' On those conditions Landis took the horses. Cleaver testified: 'He never made much fuss when he bought anything. He said, "Send them out to my place here in Reading." I sent the horses next morning. One of my men down at the stable took them up. I delivered them at Landis' place here in Reading.' Cleaver, when asked the question, 'On the night when you made this sale to Landis, did you agree on a price?' replied, 'Yes, sir; $380. Landis said, if the horses proved all right, he would keep them. Landis never made any fuss. That way I sold him lots of horses. Q. You would do it in the same way you sold them heretofore? A. Yes, sir; he usually took the horses home, and when he came to Reading again he would stop in to see me, or I would send him a letter that I wanted to know how the horses were doing, and he would give me a note, as a rule. We always had a note. Q. He would always let you know whether they were satisfactory or not? A. Yes, sir. Q. There was no time fixed in which he was to return them? A. No, sir.'

"Charles Landis, the bankrupt's son, testified: 'My father said he bought a nice pair of horses from Cleaver if they were satisfactory, and they were coming out on trial. My father never tried them. He said that the pair of horses was given on trial. Q. He stated that he bought the horses from Cleaver? A. He said that he bought them from Cleaver, and, if they were satisfactory he would keep them. He was going to give them a trial. It was always the custom to return horses if they were not satisfactory. Father went away Thursday or Friday, when the horses were got Tuesday evening, and delivered Wednesday. My father never said they were satisfactory.'

"From the record and testimony taken, the referee finds the following facts: On August 22, 1905, Cleaver entered into an agreement to sell to Landis two horses for $380. Cleaver sent them to Landis' place in Reading on August 23d, from whence Landis took them to his farm at Bowers. Landis was to try them, and, if he found them satisfactory, he was to keep them. Otherwise he was to return them to Cleaver. Cleaver and Landis had had many similar transactions. It was always the custom to return horses if they were not satisfactory. Landis would take or have horses sent home and try them, and would soon after come to Reading and see Cleaver, and, if he found the horses satisfactory, would give him a note in payment. On August 24th or 25th Landis absconded, and on August 29th creditors filed their petition to have Landis adjudged a bankrupt. C. D. Kutz was appointed receiver, pending the election of a trustee. On August 30th Cleaver, having received word of Landis' disappearance and the bankruptcy proceedings, went to Bowers, and against the will of the receiver removed the horses from Landis' stables and brought them to Reading. Landis had never tried the horses, and as his son, Charles, says, they had not been harnessed while in his possession. They were in the actual possession of Landis and his trustee seven days."

Upon these facts the referee was of opinion that the controversy between Cleaver and Landis was a contract of sale, but that delivery

151 F.—57

was not complete, and therefore that title did not pass in favor of the bankrupt's creditors. He accordingly refused to make the order prayed for by the trustee, and this refusal is now before the court for review.

I regret to differ from the learned referee, but I am constrained to do so on two grounds: The first is that the horses were in the actual custody of the District Court, acting by its receiver, and that Cleaver's conduct in taking them away by force was wholly without warrant. This wrongful removal might have been summarily redressed, and the order asked for by the trustee might have been granted for this reason alone. As was said in White v. Schloerb, 178 U. S. 548, 20 Sup. Ct. 1009, 44 L. Ed. 1183:

"We are of opinion that the judge of the court of bankruptcy was authorized to compel persons 'who had forcibly and unlawfully seized and taken out of the judicial custody of that court property which had lawfully come into its possession as part of the bankrupt's property to restore that property to its custody; and therefore our answer to the first question must be: 'The District Court sitting in bankruptcy had jurisdiction by summary proceedings to compel the return of the property seized.'"

On the merits, also, which both parties agreed should be passed upon by the referee, the order should have been granted. As I look at the testimony, it presents a case of sale or return, and, where the transaction is of this character, the American rule is clear—whatever may be the prevailing doctrine in England—that the title passes to the vendee subject to be divested if the option to return should be exercised. In Mr. R. M. Benjamin's General Principles of the American Law of Sales (2d Ed.) pp. 80, 81, the result of our own cases is thus stated:

"Rule 23. (Subrule 4.) When goods are delivered to the buyer on a contract of 'sale or return' (1), the property therein passes immediately to the buyer, defeasible by a return of the goods within the time fixed for their return, or, if no time has been fixed, within a reasonable time (2).

"(1) That is to say, sale to the one to whom they are delivered or return.

"(2) Hotchkiss v. Higgins, 52 Conn. 205, 211, 52 Am. Rep. 582; Moss v. Sweet, 16 Q. B. 493; Jameson v. Gregory's Ex'r, 4 Metc. (Ky.) 363; Marsh v. Wickham, 14 Johns. (N. Y.) 167; Westcott v. Thompson, 18 N. Y. 365; Buswell v. Bicknell, 17 Me. 344, 35 Am. Dec. 262; Ray v. Thompson, 12 Cush. (Mass.) 281, 59 Am. Dec. 187; Martin v. Adams, 104. Mass. 262; McKinney v. Bradlee, 117 Mass. 321; Schlesinger v. Stratton, 9 R. I. 578; Robinson v. Fairbanks, 81 Ala. 132, 1 South. 552; Stevens v. Hertzler, 109 Ala. 423, 19 South. 838; Hadfield v. Berry, 28 Ill. App. 376; In re Ward's Estate, 57 Minn. 377, 59 N. W. 311; Houck v. Linn, 48 Neb. 227, 66 N. W. 1103.

"The American authorities treat the contract of 'sale or return' as a present sale with option to return unless a different intention appears.

"See Crocker v. Gullifer, 44 Me. 493, 494, 69 Am. Dec. 118; Sturm v. Boker, 150 U. S. 328, 14 Sup. Ct. 99, 37 L. Ed. 1093.

"There is a manifest distinction between an optional right in the party receiving the goods to purchase and an optional right to return the same goods in whole or in part. An option to purchase, if satisfied, is a condition precedent; an option to return, if not satisfied, is a condition subsequent. In one case the property in the goods will not pass until the option is determined; in the other it passes immediately subject to the option to rescind the sale by a return of the goods. Hotchkiss v. Higgins, 52 Conn. 210, 52 Am. Rep. 582; Hunt v. Wyman, 100 Mass. 200; Colton v. Wise, 7 Ill. App. 397; Hickman v. Shimp, 109 Pa. 19; Foley v. Felrath, 98 Ala. 180, 13 South. 485, 39 Am. St. Rep. 39; Wind v. Iler, 93 Iowa, 316, 61 N. W. 1001, 27 L. R. A. 219."

To the same effect, see Benjamin (J. P.) on sales (7th Ed.) note 3, on page 7, and note 11 on pages 606 and 607. In this circuit Judge Archbald has decided the question in the same way. Re Miller and Brown, 14 Am. Bankr. Rep. 439, 135 Fed. 868; Re Wells, 15 Am. Bankr. Rep. 422, 140 Fed. 752. In Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093, the Supreme Court of the United States said, on page 328 of 150 U. S., page 104 of 14 Sup. Ct. (37 L. Ed. 1093):

"Was the contract, as claimed by counsel for the defendants, a contract of 'sale or return?' We think not. The class of contracts known as contracts of 'sale or return' exists where the privilege of purchase or return is not dependent upon the character or quality of the property sold, but rests entirely upon the option of the purchaser to retain or return. In this class of cases the title passes to the purchaser subject to his option to return the property within a time specified, or a reasonable time, and, if before the expiration of such time, or the exercise of the option given, the property is destroyed, even by inevitable accident, the buyer is responsible for the price.

"The true distinction is pointed out by Wells, J., in Hunt v. Wyman, 100 Mass. 200, as follows: 'An option to purchase if he liked is essentially different from an option to return a purchase if he should not like. In one case the title will not pass until the option is determined; in the other the property passes at once, subject to the right to rescind and return.'"

In Hickman v. Shimp, 109 Pa. 16, the Supreme Court of Pennsylvania was considering a sale on approval, and used this language:

"The contract was a conditional one. It provided for subjection of the engine to trial, and became absolute only on approval; but such a contract created a condition which must be satisfied before the promise it qualifies becomes effectual. It is therefore a condition precedent, and the title will not pass until the option is determined. In this respect it differs from what is denominated among merchants 'a sale and return,' which creates a condition subsequent merely, and passes the title at once, subject to the right to rescind and return. Hunt v. Wyman, 100 Mass. 198; Wharton on Contracts, 590; Benjamin on Sales, 791."

This expression of opinion has never been qualified, so far as I know. On the contrary, in Butler v. School District, 149 Pa. 355, 24 Atl. 308, where there was a sale upon trial, with a time fixed by the parties, Hickman v. Shimp was referred to with approval, and the court held that the option to return ceased to exist and the sale became absolute, unless the goods were returned or notice was given in accordance with the agreement of the parties. Where no time is fixed, the option must, of course, be exercised within a reasonable time. The case of Goss, etc., Co. v. Jordan, 171 Pa. 474, 32 Atl. 1031, upon which the referee relied, is not in point, I think, because the contract there was a sale on approval and the article sold was not legally delivered, while here there was certainly a complete prima facie delivery of possession, and there is not sufficient evidence to show that delivery was not intended by both Cleaver and the bankrupt.

The decision of the referee is reversed, and it is now ordered that within five days of the service of a copy of this order upon Cleaver he deliver the horses in controversy to the bankrupt's trustee or pay to the trustee the value thereof, namely, $380, with interest from August 30, 1905.