ANDREW P. HOTCHKISS *vs.* WILLIAM E. HIGGINS.

An innkeeper sent the following order to a wholesale liquor dealer:— "Please send by first express a half barrel Bourbon whiskey and two baskets of Piper wine. What is used I will account for and ship rest back to you. I want it for the commercial travelers, who will be here Friday to dinner." Held that the title passed on delivery to the innkeeper, so that the liquors could be attached by his creditors as his property.

In the case of the delivery of goods with the optional right to purchase on the part of the party receiving them, the title will not pass till the option is determined. In the case of their delivery with reference to a purchase, with the optional right to return them in whole or in part, the title passes immediately, subject to the right to return.

Evidence that the seller understood the order to mean that the liquors would remain his till disposed of by the purchaser, held inadmissible.

Also evidence that the purchaser so understood his order and intended that it should be so understood by the seller.

[Argued June 3d—decided June 27th, 1884.]

REPLEVIN, for a quantity of whiskey and wine; brought to the Court of Common Pleas, and tried to the court before *Torrance, J.* The following facts were found by the court:—

The plaintiff was, on the 26th day of July, 1883, and still is, a wine and liquor merchant, duly licensed for the town of New Haven and residing and doing business there. On that day he sold to John B. Northrop, of the town of Branford, one-half barrel of Bourbon whiskey, containing twenty-two gallons, of the value of fifty-five dollars, and two baskets of champagne wine of the value of forty-five dollars, being the property named in the writ of replevin. All this merchandise was sold to Northrop in pursuance of the following written order from him to the plaintiff:—

"Island View House, Stony Creek, Conn., July 25, 1883.

*Mr. A. P. Hotchkiss:* Dear Sir—Please send me by first freight one half barrel Bourbon whiskey and two baskets of Piper wine, quarts. What is used will account for and ship rest back to you. I want it for the commercial travelers, who will be here Friday to dinner. Expect a big time if pleasant. Respectfully yours, *J. B. Northrop.*"

On the trial it did not appear that either prior or subsequent to this order any express contract had been entered into by the plaintiff and Northrop in relation to the goods named in the order.

The plaintiff at the time he sold the liquors to Northrop charged the same to him upon his account book, and the charge so remained at the time of trial.

All the liquors were immediately after the sale and on the same day placed in the possession of Northrop at Stony Creek, in the town of Branford. On the 27th of July, 1883, the defendant, as a deputy sheriff for the county of New Haven, attached and took into his possession the liquors as the property of Northrop by virtue of a writ of attachment against him in favor of one Sylvester N. Ryder, returnable to the Court of Common Pleas for New Haven County on the first Monday of September, 1883, claiming $800 damages, and directing the defendant as such deputy sheriff to attach to the value of $800 the goods or estate of Northrop, which writ was in due form of law and was signed by competent authority; and the defendant so held

the liquors at the time of the commencement of the present action. At the time of the attachment all the merchandise was tagged " J. B. Northrop, Stony Creek, Conn.," and was in the possession of Northrop at Stony Creek in his store-room along with other liquors belonging to him. At this time none of the liquors had been used by Northrop, nor had the packages containing the same been opened by him. Northrop was present at the time of the attachment, and the defendant at the time had no notice that the liquors so attached were claimed by the plaintiff.

No demand was made by the plaintiff or any one in his behalf upon the defendant for the property named in the writ of replevin prior to the commencement of this action. The plaintiff was asked by his attorney, after he had offered the order in evidence, the following question : " Did you interpret and understand this order to mean, and did you act upon the understanding of the order, that the property named in the complaint and order should be and remain your property until disposed of by Northrop ? " Which question the counsel for the defendant objected to and it was ruled out by the court, the plaintiff excepting. Northrop was called by the plaintiff and asked the following question : " At the time you gave the order did you intend and consider that the property asked for should be and remain the property of Hotchkiss until sold by you if received ? " Which question was objected to by the counsel for the defendant, and the objection sustained by the court, the plaintiff excepting.

Upon these facts the court rendered judgment for the defendant. The plaintiff appealed to this court.

*A. H. Robertson*, for the appellant.

1. The contract was a conditional one and the title never vested in Northrop, but at the time of the attachment was still in the plaintiff. Where there is a condition precedent attached to a sale, it is a conditional sale, and the title to the property does not pass even though it has been delivered, and the court will carry out the intentions of the

parties in respect to the condition. The condition may be that no title is to pass until the price, quality or quantity to be used has been ascertained. Benjamin on Sales, § 320; *Barrett* v. *Pritchard*, 2 Pick., 516; *Meldrum* v. *Snow*, 9 id., 441; *Mason* v. *Thompson*, 18 id., 308; *Riddle* v. *Varnum*, 20 id., 283; *Coggill* v. *Hartford & New Haven R. R. Co.*, 3 Gray, 547; *Zuchtmann* v. *Roberts*, 109 Mass., 53; *Benner* v. *Puffer*, 114 id., 378; *Sumner* v. *Woods*, 67 Ala., 139; *Stone* v. *Peacock*, 35 Maine, 388; *Cole* v. *Berry*, 42 N. Jer. Law, 308; *Wilkinson* v. *Holliday*, 33 Mich., 386; *Gibbs* v. *Benjamin*, 45 Verm., 124; *Warren* v. *Buckminster*, 24 N. Hamp., 342; *Smart* v. *Batchelder*, 57 id., 142. The conditions precedent in the case under consideration before title could vest in Northrop were: the separation of the quantity of liquor required by Northrop for the dinner referred to in his order, and payment for those he had separated or used, and the return of the remainder to Hotchkiss. Neither of these conditions had been fulfilled at the time of the attachment, consequently no title had vested in Northrop. Hotchkiss could not have maintained a suit against Northrop for goods sold and delivered until then, or until Northrop had had a reasonable time in which to perform the conditions. There had been no reasonable time to perform them. The liquors were sent to Branford on July 26th, 1883, and were attached the next day by the defendant as deputy sheriff. It is not necessary that the condition or agreement be expressed in the order to make the sale conditional; it may be implied. *Fuller* v. *Bean*, 34 N. Hamp., 304; *Wilkinson* v. *Holliday*, 33 Mich., 386. Nor does it alter the case that the goods were charged on the books of the vendor as in this case. It was merely for the purpose of keeping track of the property. *Porter* v. *Pettengill*, 12 N. Hamp., 299. Conditional sales have been recognized and sustained by the courts of Connecticut on the principle that a man can do as he will with his own and need not part with his property unless paid for, if he so contracts and intends, even where the property is to be consumed by the vendee before payment. *Forbes* v. *Marsh*, 15 Conn.,

394; *Cragin* v. *Coe*, 29 id., 53; *Lewis* v. *McCabe*, 49 id., 141. These sales have been held by the courts of Massachusetts, New Hampshire, Vermont and Connecticut good as against third parties, whether attaching creditors of the vendee or *bonâ fide* purchasers without notice, when no fraud is proved. *Hirschorn* v. *Canney*, 98 Mass., 150; *Coggill* v. *Hartford & N. Haven R. R. Co.*, 3 Gray, 547; *Tomlinson* v. *Roberts*, 25 Conn., 477; *Cragin* v. *Coe*, 29 id., 51; *Lewis* v. *McCabe*, 49 id., 141; *Armington* v. *Houston*, 38 Verm., 450; *Rogers* v. *Whitehouse*, 71 Maine, 222. No fraud was claimed or proved at the trial in this case. It was not necessary for the plaintiff to make any demand before bringing his suit of replevin. *Lucas* v. *Birdsey*, 41 Conn., 357; *Brown* v. *Fitch*, 43 id., 513.

2. The questions put to the plaintiff and Northrop and ruled out by the court, were admissible. Where material, as in the case at bar, the courts have held that the intention or understanding of a party to a contract at the time of signing could be proved by asking the party questions similar to those asked in the present case, as to what he understood the intent of the contract to be at the time of signing the same. *Morrill* v. *Blackman*, 42 Conn., 324; *Thomas* v. *Mullain*, 44 id., 145; *Schindler* v. *Mulheiser*, 45 id., 154; *Jones* v. *Howland*, 8 Met., 385; *Edwards* v. *Currier*, 43 Maine, 482; *Wheelden* v. *Wilson*, 44 id., 18; *French* v. *Marstin*, 24 N. Hamp., 450; *Norris* v. *Morrill*, 40 id., 401; *Graves* v. *Graves*, 45 id., 324; *Hale* v. *Taylor*, id., 407; *Prescott* v. *Locke*, 51 id., 101.

*E. H. Rogers*, with whom was *J. G. Clark*, for the appellee.

Loomis, J. The plaintiff was a licensed liquor merchant in New Haven and received from one J. B. Northrop, proprietor of a hotel at Stony Creek, a written order dated July 25th, 1883, signed by the latter and directed to the plaintiff, as follows:—" Please send me by first freight one half barrel Bourbon whiskey and two baskets of Piper wine,

quarts. What is used will account for, and ship rest back to you. I want it for the commercial travelers who will be here Friday to dinner. Expect a big time if pleasant." The liquors were sent as directed and charged to Northrop on the plaintiff's books, and were duly received by Northrop, but while in his possession at Stony Creek and before any of it had been used it was attached by the defendant as deputy sheriff as the property of Northrop in a suit against him and in favor of one Sylvester N. Ryder. The question for our consideration arising upon these facts is whether the property when attached belonged to Northrop or the plaintiff.

It seems to us that the principles invoked in behalf of the plaintiff to show that the title remained in him do not apply to this case.

Where personal property has been sold and delivered with the privilege of purchase, but upon the express condition that the title should not pass to the vendee until payment of the price, our courts, in common with many other American authorities, have uniformly upheld the vendor's title, even against the vendee's creditors or subsequent purchasers in good faith and without notice. *Lewis v. McCabe*, 49 Conn., 141.

In this class of cases the stipulation of the parties that the title should remain in the vendor is controlling. The case at bar lacks this distinguishing feature, and so we must assign it to a different class of contracts.

But the plaintiff says that the contract must be regarded as a conditional sale; that Northrop had a mere option to purchase what he might consume, and that this option was a condition precedent which he had not exercised at the time of the attachment.

There is plausibility in this claim, because we approach the border line, which is often obscure, that separates bailments from sales. Nevertheless there is a manifest distinction between an optional right in the party receiving the goods to purchase, and an optional right to return the same goods in whole or in part. In the former case the title will

not pass till the option is determined, while in the latter it passes immediately to the party receiving the goods subject to be returned. Northrop's option was not to purchase if he sold the liquors, but to return the purchase if he did not sell. This distinction is abundantly supported by the authorities.

In *Buswell* v. *Bicknell*, 17 Maine, 344, where the owner of a cow delivered her to another on his promise to pay a certain sum of money therefor by a given day, or to return the cow and pay a lesser sum for its use, the property in the cow it was held passed immediately from the former to the latter. WESTON, C. J., in delivering the opinion of the court said:—"Whether the alternative is to return specifically or in kind, or specifically or to pay a certain sum, the principle is the same. The property in the thing delivered passes, and the remedy of the former owner rests in contract. It is the option conceded to the party receiving which produces this effect. He may do what he will with the article received. If he pays, he fulfils his contract. If he neither pays nor returns, he is liable to an action." And in *Crocker* v. *Gullifer*, 44 Maine, 493, the court says:— "The general proposition that a delivery of an article at a fixed price, to be paid for or returned, constitutes a sale, is not questioned. When the option is with the party receiving, to pay for or return the goods received, the uniform current of authorities is that such alternative agreement is a sale." The same distinction is recognized and applied in *Holbrook* v. *Armstrong*, 1 Fairfield, 31; *Perkins* v. *Douglass*, 20 Maine, 317; *Dearborn* v. *Turner*, 16 Maine, 17; and *Hunt* v. *Wyman*, 100 Mass., 200.

In the light of these distinctions we think the case at bar belongs to the class of agreements usually termed contracts of "sale or return," which are thus defined in Addison on Contracts, book 2, chap. 7, bottom page 532, 8th edition:— "When goods are sold under a contract of sale or return the sale is a conditional or defeasible sale. The right of property in the goods passes to the purchaser, subject to be divested out of him and revested in the vendor by a return

of the goods according to the terms of the contract." This proposition is strongly supported by the uniform current of authorities. In addition to those cited in the brief for the defendant, which are in point, we cite *Moss* v. *Sweet*, 3 Eng. L. & Eq., 311; *Schlesinger* v. *Stratton*, 9 R. Isl., 578; *Jameson* v. *Gregory*, 4 Met. (Ky.), 363; *Johnson* v. *McLane*, 7 Blackf., 501; *Kinney* v. *Bradlee*, 117 Mass., 321; *Martin* v. *Adams*, 104 id., 262; Benjamin on Sales, 2d Am. ed., § 597; Hilliard on Sales, 3d ed., p. 28, § 3.

In stating that the doctrine above mentioned is sustained by the uniform current of authorities it may be thought we have overlooked a class of cases apparently very similar in which a different result was reached. In some of those cases the relation of the parties to the contract has been considered like that of consignor and consignee, or principal and agent; in others the controlling fact was the existence of a general custom which by implication became a part of the contract, whereby it was understood that the title was to remain in the original owner. Such was the case of *Meldrum* v. *Snow*, 9 Pick., 441, where the plaintiffs in the replevin suit were brewers and had sent to a retailer a large quantity of beer in the plaintiffs' casks, which was attached as the property of the retailer while in his cellar. Evidence was given at the trial of a universal custom among brewers and retailers of beer, as beer cannot be removed in warm weather without injury, under which the brewer in the spring delivers to the retailer such quantity of beer as he expects to retail in the ensuing season; the barrels belong to the brewer and are to be returned to him when emptied; the retailer pays for all the beer he vends in the course of the season, but if the beer becomes sour or stale or is lost by fire or other casualty, the loss falls on the brewer, and if any remains at the end of the season it may be returned. It was held that the beer could not be attached as the property of the retailer. The court in giving the opinion said :—"Retailers who take beer to sell are often persons of very small property, and the custom appears to be so general and well known that the retailer

would not be supposed to be the owner of the beer. No injury therefore can arise to creditors of the retailer. And it being beneficial to the community to introduce the use of beer, public policy would justify us in favoring the custom."

In the case at bar there was no pretence of any custom or any peculiar circumstances that might require a modification of the doctrine as to sale or return. What the dictate of public policy might be we refrain from discussing.

But the plaintiff further says that, although he made no attempt to prove any custom affecting the question of title, yet he did offer to prove the secret and unexpressed understanding of each party, but was prevented by the ruling of the court, and he bases his appeal in part upon this ground.

The plaintiff was asked by his counsel: "Did you interpret and understand this order to mean, and act upon the understanding of the order, that the property named in the complaint and order should be and remain your property until disposed of by said Northrop?" And Northrop was asked by the plaintiff: "At the time you gave the order did you intend and consider that the property asked for should be and remain the property of Hotchkiss until sold by you if received?" A very brief discussion will suffice to show that the court did not err in rejecting this evidence.

The bargain was consummated solely through the written order, unaccompanied by any verbal declarations of any kind. The parties were far apart and what each thought was unknown to the other and consequently had no influence in producing the result. All the words indicative of intent are embodied in the writing and there is no such ambiguity as would allow the introduction of any extrinsic evidence whatever, much less such evidence as we are considering. When the contract is in writing the question always is one of construction merely; that is, what the party has expressed by his words and not what he intended to express. The actual intention as an independent fact can only be shown where the language of the writing is

applicable indifferently to more than one object. 3 Phillips's Evidence, Cowen & Hills' Notes, part 2d, page 1388. *Fairfield* v. *Lawson*, 50 Conn., 501.

In *Foster* v. *Ropes*, 111 Mass., 16, the court, with reference to the effect of evidence very similar to that in the case at bar, said:—" In all cases, however, the intention of the parties as to the time when the title is to pass can be ascertained only from the terms of the agreement, as expressed in the language and conduct of the parties and as applied to known usage and the subject matter. It must be manifested at the time the bargain is made. The rights of the parties under the contract cannot be affected by their undisclosed purposes, nor by their understanding of its legal effect." This was said with reference to a mere verbal contract. The principle would apply to a written contract with even greater force, as it would be reinforced by another rule to which we have before referred. *Glendale Manuf'g Co.* v. *Protection Insurance Co.*, 21 Conn., 37.

There was no error in the judgment and rulings of the court complained of.

In this opinion the other judges concurred.