JACOB STRAUSS SADDLERY COMPANY, Appellant, v. KINGMAN & COMPANY, Respondent.

#### St. Louis Court of Appeals, November 11, 1890.

1. **Contracts:** CONSTRUCTION. When a written contract is couched in doubtful or obscure language, subsequent writings of the parties on the same subject may be considered in arriving at its proper construction.

2. **Sales:** CONTRACT FOR SALE OR RETURN AND OPTION TO PURCHASE DISTINGUISHED. If goods be purchased with an option to return them, a conditional sale results, and the title is in the vendee until a return is made. But if the goods be received with an option thereafter to purchase or acquire the ownership of the same, or otherwise to return them, no sale results until the option to purchase is exercised.

3. ———: BAILMENTS : DESTRUCTION OF PROPERTY BY FIRE. If goods be delivered under what is known as a contract of "sale or return," the loss arising from their destruction by fire, while they are so held, falls on the vendee ; but if the goods are delivered merely with an option to the bailee to thereafter acquire the ownership, or otherwise to return them, the loss from accidental fire falls on the bailor. The risk of loss from accidental destruction in either case resides where the title is.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Chas. Nagel,* for appellant.

( 1 ) Defendant's instruction number 1 is improper : *First,* because it calls for the admission of letters to aid in the interpretation of an independent written contract ( *Bigelow v. Callamore,* 5 Cush. 226 ) ; *second,* because the entire instruction in effect is a direction for judgment for defendant, and should not have been given, unless this court concludes that, under the testimony, such a direction would have been proper. ( 2 ) Plaintiff's instructions 2 and 3, having been properly given,

the only correct judgment, under the evidence, could be for plaintiff. In fact plaintiff's instruction number 1 was improperly refused. *Hess v. Clark*, 11 Mo. App. 492 ; *Ammidown v. Towell*, 14 Mo. App. 578 ; *Curtis v. Driggs*, 25 Mo. App. 175 ; 2 Addison on Contracts, [ 8 Ed.] ch. 7, p. 532 ; Hilliard on Sales [ 3 Ed.] p. 28, sec. 3 ; Benjamin on Sales, secs. 796–9, p. 591 ; Story on Sales [ 4 Ed.] sec. 249 ; *Jameson v. Gregory*, 4 Metcalf ( Ky.) 363 ; *Buswell v. Bicknell*, 17 Me. 344 ; *Carter v. Wallace*, 32 Hun, 384 ; *Jones v. Wright*, 71 Ill. 61 ; *Ex parte White*, 21 W. R. 465 ; *Moss v. Sweet*, 3 Eng. L. & E., p. 311 ; *Hotchkiss v. Higgins*, 52 Conn. 205.

*Lubke & Muench*, for respondent.

The delivery of these goods was for the purposes of sale, to take effect upon the happening of a condition subsequent. That condition not having happened before the five hundred dollars' worth of goods in controversy was destroyed by accidental fire, the goods never became the property of respondent. *Parmlee v. Catherwood*, 36 Mo. 479 ; *Little v. Page*, 44 Mo. 412 ; *Ridgeway v. Kennedy*, 52 Mo. 24 ; *Wangler v. Franklin*, 70 Mo. 659 ; *Matthews v. McElroy*, 79 Mo. 202. Respondent held these goods for plaintiff on consignment, and is, therefore, not liable for them, having used reasonable care in keeping them. *Chapman v. Kerr*, 80 Mo. 158. The facts in the case being undisputed, there is no ground for presuming a resale of these goods by respondent to third parties. *Blow v. Spear*, 43 Mo. 497 ; *McArthur v. Wider*, 3 Barb. 66. There was no divestiture of title from appellant to respondent, and, without an intention for such divestiture, there can be no sale. Hence the rule by which a vendee takes the risk as to property which he has purchased, with a right to rescind the sale on the happening of a subsequent condition, has no application. *Curtis v. Driggs*, 25 Mo. App. 175 ; *England v. Mortland*, 3 Mo. App. 490.

BIGGS, J.—This is an action for goods sold and delivered, amounting, at the contract price, to the sum of five hundred dollars. The cause was submitted to the court without a jury, and the finding and judgment were for the defendant. The plaintiff appealed.

The plaintiff's evidence tended to prove that, for the year 1887, the plaintiff and defendant did business with each other under the following written agreement, to-wit:

"Memorandum agreement made and entered into this second day of February, A. D. 1887, by and between Jacob Strauss Saddlery Company of St. Louis, Missouri, party of the first part, and Kingman & Co. of Peoria, Illinois, and of St. Louis, Missouri, party of the second part, witnesseth:

"*First.* That the party of the first part agrees to furnish the said party of the second part with harness of their manufacture at ten (10) per cent. discount from list prices now in force, for the season of 1887, and agrees to carry with the said party of the second part, at Peoria, a stock amounting at net prices to not over five hundred ($500) dollars.

"*Second.* The party of the second part is to make report of goods sold, on or about the first of each month, the net amount to be due and payable in ninety days from date of said report; or if cash is remitted by party of the second part three per cent. discount will be allowed.

"*Third.* Prices of other goods to be agreed upon from time to time, subject to this contract.

"*Fourth.* Wooden packages for each set of single or double harness to be furnished at not exceeding ten cents each. Drayage, free.

"*Fifth.* The party of the second part agrees to handle the harness of the party of the first part exclusively; but it is understood that, if the party of the first part cannot furnish the goods wanted promptly,

the party of the second part is at liberty to purchase elsewhere.

"*Sixth.* All harness furnished under this agreement to be made of good material and by competent workmen, and to be as represented in every respect."

The plaintiff also introduced evidence tending to prove that, at the expiration of the agreement, it was renewed for the year 1888; that, during the year 1888, the plaintiff delivered to the defendant, in pursuance of this agreement, goods to the amount of thirty-four hundred and four dollars and eighty-four cents; that, on account of goods so sold, the defendant remitted only the sum of twenty-nine hundred and four dollars and eighty-four cents; that, at the close of the year 1888, there remained unaccounted for in the hands of the defendant a lot of harness of the value of five hundred dollars, which the defendant refused to either pay for or return.

The defendant admitted the agreement, and it also admitted that, during the year 1888, it had received five hundred dollars' worth of goods under it, for which it had rendered no account. As an excuse for not returning or paying for the goods the defendant introduced evidence to the effect that, during the year 1888, the house in which it was doing business was destroyed by fire, and that, of the goods received under the contract, seven hundred and fifty-six dollars' worth was consumed; that the goods were stored in a reasonably safe place, and the fire did not occur through the defendant's neglect; that, after the fire, and prior to the institution of this suit, the defendant paid to the plaintiff one hundred and thirty-six dollars and sixty cents, which paid in full for all goods received in excess of five hundred dollars.

At the close of the business for the first year, the following correspondence was had between the parties in reference to their business growing out of the agreement and its renewal:

"ST. LOUIS, January 4, 1888.
"*Kingman & Co., Peoria, Ill.*

"GENTLEMEN :—Inclosed we hand you invoice, in accordance with your order of the third inst. We shall open a new account with this bill, as the contract that existed between us has expired by limitation. We hardly think it will justify us to renew the contract, carrying with you a stock of five hundred dollars, but will sell you goods at a discount, as heretofore, on ninety days or three per cent. off for cash.

"We shall aim to fill all of your orders with a view to pleasing you, as well as your customers, giving your orders, at all times, our most careful and prompt attention.

"The amount owing us on the first is $600.56. You will oblige us by settling all above the five hundred dollars, and we would ask you in regard to the five-hundred-dollar stock to keep it on four months' terms, settling for it in full at the end of that time, or in order to close it up by giving us your note.

"No doubt the goods are such that you can easily dispose of them; as we have aimed to treat you nicely, and believe we have done so, we hope you can accommodate us by keeping the stock on the above terms.

"Awaiting your kind and early answer, we remain,
"Yours truly,
"JACOB STRAUSS SADDLERY CO.
"(Signed.)    A. SONDHEIMER,
"Secretary and Treasurer.

"P. S.—As an additional inducement for you to keep the stock of five hundred dollars on the terms above stated, we would allow you an extra five per cent. on this amount of five hundred dollars rather than have the goods returned to us here, or held subject to our disposition.    Yours truly,
"JACOB STRAUSS SADDLERY CO.
"A. SONDHEIMER,
"Secretary and Treasurer."

" St. Louis, January 11, 1888.

"*Kingman & Co., Peoria, Ill.*

" GENTLEMEN : —We have yours of the fifth inst., covering draft for $100.56 on account.

" When we wrote you that we did not care to continue on the basis of carrying with you five hundred dollars' worth of stock, on the basis of last year, we took into consideration the very limited amount of goods bought of us during the year, which we thought hardly justified carrying the stock mentioned.

" We have thought the matter over further since the receipt of your letter, and have concluded to try it with you another year on the same basis as '87, and hope that your purchases of us during the year will be much larger than for the year past.

" In this connection we beg to bring to your attention the desirability, and almost necessity, of disposing of the old stock, and pushing it as much as possible ; for, if the first shipment be carried into your stock for several years, the goods will certainly not improve by age, and we, therefore, hope you will duly appreciate this point, and act accordingly.

" Hoping to hear from you often, we remain,

" Yours truly,

" JACOB STRAUSS SADDLERY CO.

" A. SONDHEIMER,

" Secretary and Treasurer."

" January 12, 1888.

"*Jacob Strauss Saddlery Co., St. Louis, Mo.*

" GENTLEMEN : —Yours of eleventh, proposing to continue contract for another year upon the same basis as 1887, is received and noted ; we file your letter with contract of 1887 for guidance.

" We also note what you say about closing out the old stock, in reference to using new stock ; we will endeavor to do this as far as possible.

" Yours truly,

" KINGMAN & CO.,

" By KINGMAN."

Upon this statement of the evidence the defendant, on the one hand, denied legal liability to pay for the goods upon two grounds: *First.* That the delivery was merely for the purposes of a sale to take effect upon the happening of a condition. *Second.* That the defendant held the goods for the plaintiff on consignment. On the other hand, the plaintiff urges that the transaction in reference to the goods was one of "sale or return," and, as the defendant neither returned nor paid for the goods at the end of the year, its right of action for goods sold and delivered became complete.

At whose risk were the goods at the time of the fire? Who had the title? The law fixed the risk where the title resided. In the first place the reading of the contract presents to our mind some ambiguity as to its true meaning in reference to the goods which the plaintiff agreed to carry with the defendant as "stock." For this reason we think that the contract and letter ought to be read together for the purpose of ascertaining, if we can, the construction placed upon the writing by the parties themselves. *Koehring v. Mueminghoff*, 61 Mo. 403; *Railroad v. Platte*, 15 Mo. App. 588, When a written contract is couched in doubtful or obscure language, subsequent writings of the parties on the same subject may enable the court to clearly understand the meaning and intention of the parties. *Edwards v. Smith*, 63 Mo. 119.

If the delivery of the goods under the agreement, when viewed in the light of the subsequent correspondence between the parties, amounted to what is called a contract of "sale or return," then the title vested immediately in the defendant, and the loss must fall on it. *Meldrum v. Snow*, 9 Pick. 441; *Hilliard on Sales* [3 Ed.] p. 28, sec. 3; *Crocker v. Gullifer*, 44 Me. 491; *Buswell v. Bicknell*, 17 Me. 344; *Dearborn v. Turner*, 16 Me. 17; *Holbrook v. Armstrong*, 10 Me. 31; *Jameson v. Gregory*, 4 Met. (Ky.) 363; *Moss v. Sweet*, 3 Eng. L. & E. R. 311; *Hotchkiss v. Higgins*, 52 Conn. 205. Addison

in his work on contracts thus defines such a sale: "When goods are sold under a contract of 'sale or return,' the sale is a conditional or defeasible sale. The right of property in the goods passes to the purchaser, subject to be divested out of him and revested in the vendor by a return of the goods to the latter, in accordance with the terms of the contract." Addison on Contracts [8 Ed.] star p. 991.

The application of legal rules to the agreement, as interpreted by the parties themselves, is somewhat troublesome. Our conclusion is that, when the contract expired, it was the duty of the defendant either to pay for or return, without demand, all goods received in excess of the value of five hundred dollars. If it failed to do this, it was liable to an action. As to such excess the dealings between the parties contemplated a contract of "sale or return." But we are of the opinion that this rule ought not to be applied to the "stock of the value of five hundred dollars," which the plaintiff agreed to keep with the defendant. As to this, other principles find application and must govern. It cannot be said that the defendant *purchased* the "stock" with the privilege of returning the same at the expiration of the contract, if unsold. Under the agreement the defendant only obtained the *optional right to purchase it*, in the event he found purchasers for the whole, or any part of it. The plaintiff was seeking a market for its goods, and, in order to induce the defendant to give its patronage, it was agreed that, of the goods furnished, five hundred dollars' worth was to be considered as stock *furnished* by the plaintiff. If this portion of the goods was not to be at the risk of the plaintiff, but was to be placed in the same category with goods ordered in excess, then the stipulation by the plaintiff to "*furnish* and *keep* with the defendant a stock of the value of five hundred dollars," is without meaning. Our view of the case would leave the title to the goods ordered, up to the value of five hundred dollars, in the plaintiff,

until the defendant exercised his right to purchase by selling some portion or all of them. At all times, goods of the value of five hundred dollars were at the plaintiff's risk, unless the defendant reduced the entire stock on hand below that figure by sales. Our idea of the principle which should govern this case is stated in the case of *Hotchkiss v. Higgins*, 52 Conn. 205. Judge Loomis, speaking for the court, said: "There is a manifest distinction between *an optional right in the party receiving the goods to purchase, and an optional right to return* the same goods in whole or in part. In the former case the title will not pass until the option is determined, while in the *latter* it passes *immediately* to the party receiving the goods subject to be returned. Northrop's option was not *to purchase* if he sold the liquors, but to *return the purchase* if he did not sell." This is the distinction we make as to the "stock," and this interpretation of the contract is irresistible, when the contract is read in the light of the letters in evidence. After the expiration of the first year's business, the plaintiff wrote to the defendant under date of January 4, 1888, as follows: "The amount owing us on the first is $600.56; you will oblige us by *settling all above the five hundred dollars*, and we would ask you in regard to the *five-hundred-dollar stock to keep it on four months' terms*, settling for it in full at the end of that time, or in order to close it up by giving us your note. No doubt the goods are such that you can easily dispose of them; as we have aimed to treat you nicely, and believe we have done so, we hope you can accommodate us by keeping the stock on the above terms. * * * As an additional inducement for you to keep the stock of five hundred dollars on the terms above stated, we would allow you an extra five per cent. on this amount of five hundred dollars rather than have the goods *returned* to us here or held subject to our disposition." When this letter was written the plaintiff was not disposed to continue the business arrangement, and as a

reason for this it wrote: "We hardly think it will justify us to renew the contract, *carrying with you a stock of five hundred dollars*, but will sell you goods at a discount, as heretofore, on ninety days or three per cent. off for cash." In answer to this letter defendant immediately sent a draft to the plaintiff for the sum of $100.56, thereby recognizing the fact that it owed the plaintiff for all goods received in excess of five hundred dollars. When the plaintiff received the defendant's letter inclosing the check for $100.56, it determined to renew the contract upon the same terms, and did so in its letter of January 11, 1888.

It will not be necessary to notice the instructions. As the facts were uncontroverted, the defendant was entitled to a declaration for judgment in its favor.

The judgment will be affirmed. All the judges concurring, it is so ordered.