W. IRVING SCHERMERHORN BROS. CO. et al., Appellants, v. MOSES M. HEROLD, Respondent.

### St. Louis Court of Appeals, November 14, 1899.

1. **Sale of Property Under Deed of Trust: CONVERSION: DAMAGES RECOVERABLE.** There never having been any acceptance of the twine by the paper company, the title thereto never vested in it, and the deed of trust by the company to defendant covering the twine did not convey the title, and the sale of it under the deed of trust, constituted a wrong for which an action of conversion would lie at the instance of plaintiffs to recover damages.

2. ———: ———: **RULING OF TRIAL COURT, ERROR.** The paper company agreed that it would store the twine in its warehouses for plaintiffs and would buy it upon satisfactory assurances that it would have no trouble over the second order. This was the condition, when the deed of trust was made conveying the twine to defendant, and under which it was afterwards sold: Held, that the title to the goods was in plaintiffs, and the ruling of the trial court that forced the plaintiffs to a nonsuit was wrong and reversible error.

3. ———: ———: **OPTIONAL CONTRACT.** The paper company's promising to purchase the goods, whenever it received satisfactory assurance, that it would have no trouble over the second order, was not a conditional sale, whereby the title to the goods would vest upon the happening of a specified contingency, but was more in the nature of an option to buy, leaving the title to the goods in plaintiffs.

Appeal from the Circuit Court of St. Louis City.—*Hon. William Zachritz*, Judge.

REVERSED AND REMANDED.

*Carter & Sager* for appellant.

(1) The agreement of sale comes within the Statute of Frauds. R. S. 1889, sec. 5181. (2) There is no evidence of a compliance with the statute, neither an acceptance nor memorandum sufficient to bind contract. Smith v. Thell, 82 Mo. 215; Story on Sales, sec. 269; Brown on Statute of Frauds, sec. 384; 1 Greenleaf on Evidence, sec. 268. (3) If it should be held that the letter written by the Missouri Paper Company, refusing the goods was enough to satisfy the statute the subsequent negotiations between Mr. Allen on behalf of plaintiff and Mr. Spiro on behalf of the Missouri Paper Company, whereby it was agreed that the twine should be stored for plaintiff was a revocation of former transactions and was a new contract—one of bailment. Mfg. Co. v. Jones, 64 Mo. App. 21; Chouteau v. Iron Works, 94 Mo. 388. (4) If it is held that the letter of the Missouri Paper Company declining to receive the twine was binding as a compliance with the statute, it can only apply to that part of the goods received at the time, and can not affect the subsequent shipment.

*Nathan Frank, Jones & Herold* for respondents.

(1) All that is necessary is that the signature of the party to be charged shall be present, and the terms of the contract appear with reasonable certainty. Heideman v. Wolfstein, 12 Mo. App. 366; Christerman v. Wooley, 41 Mo. App. 53; Cunningham v. Williams, 43 Mo. App. 629. The Statute of Frauds is in the alternative, the provisions being: "No contract for the sale of goods, wares and merchandise, for

the price of $30 and upwards shall be allowed to be good un-
less the buyer shall accept part of the goods so sold and actu-
ally receive the same, or give something in earnest to bind the
bargain, or in part payment, or unless some note or memo-
randum in writing be made, etc." Consequently, when there
is a note or memorandum of the contract signed by the party
to be charged, an acceptance of the goods is not necessary in
order to make a complete contract. "Mutual concurrence,
therefore, such as part acceptance and receipt or part payment
must imply, becomes with reference to written compliance
of no consequence. The writing whenever given binds the
maker and signer to the bargain." 2 Schouler Personal Prop-
erty, sec. 481. (2) Revocation is a matter of intent
and can be effected by mutual consent only and not by the
act of one party except in case of fraud or mistake. Claes
& L. Mfg. Co. v. McCord, 65 Mo. App. 507.

BIGGS, J.—This is an action for damages for the al-
leged conversion of a lot of hemp twine. It is admitted that
in November, 1897, the Missouri Paper Company executed a
deed of trust on its stock of goods to secure certain of its
creditors; that the defendant Herold was the trustee in the
deed; that at that time the twine in question was in the store
room of the Paper Company; that the defendant took pos-
session of it under the deed of trust and refused to surrender
it to plaintiffs, and that he subsequently sold it under the deed
of trust. The plaintiffs claim that they were the owners of
the goods and they sue for their value. At the close of their
evidence the circuit court intimated that it would sustain a
demurrer to the evidence, and thereupon the plaintiffs sub-
mitted to an involuntary nonsuit. The court having refused
to set aside the nonsuit, the plaintiffs have brought the case
here by appeal.

It is conceded that the twine belonged either to the plain-
tiffs or to the Missouri Paper Company. The circuit court

was of the opinion that the evidence introduced by plaintiffs conclusively proved that the title to the property was in the Missouri Paper Company, and that therefore it passed to the defendant under the deed of trust. In reviewing the question the view of the evidence most favorable to plaintiffs must be adopted.

The plaintiffs' evidence tended to prove these facts: In August, 1897, the plaintiffs were brokers in the city of St. Louis. They handled and sold on commission the goods of the Jacobs Cordage Company, whose manufactory was located in Cincinnati, Ohio. At that time the Missouri Paper Company was doing business in the city of St. Louis. In the month mentioned the plaintiffs solicited an order from the Paper Company. The latter gave a verbal order for a lot of hemp twine to be shipped in September or October. In the meantime the Paper Company was to advise the plaintiffs of the sizes or specifications of the twine, which it was not then prepared to give. The order was placed by plaintiffs with the Jacobs Cordage Company, the specifications to be sent later. After the order was given but prior to the shipment of the goods, a traveling salesman of the Cordage Company visited St. Louis and represented to the Paper Company that the plaintiffs were not the agents of the Cordage Company, and he induced the Paper Company to place the order with him. Subsequently the plaintiffs applied to the Paper Company for the specifications, and the secretary of the company refused to give them, and then informed the plaintiffs of the statements made by the salesman, and that his company had given the salesman a duplicate order with the specifications. Thereupon the plaintiffs wrote to the Cordage Company protesting against the unwarranted action of its salesman. Soon thereafter a part of the goods were shipped direct to the Paper Company, but the Cordage Company sent the bill of lading to plaintiffs. Immediately upon the receipt of the bill of lading the plaintiffs notified the Paper Company of the fact

and rendered a bill for the goods in their own names. The Paper Company refused to receive the goods or to pay for them. In response to plaintiffs communication the Paper Company sent the following letter inclosing therein the bill sent by plaintiffs:

"Missouri Paper Company,
St. Louis, Oct. 9th, 1897.
"Schermerhorn Bros., Co.,
No. 413 N. 2nd St., City.

"Gentlemen:—We herewith return you bill, as we will not accept this twine. You may keep this twine in your stock and if we need it later on, we may take it. Do not send us the balance either. We have had too much unpleasantness regarding this, and do not wish to be at outs with the mill and the broker also.                    Yours truly,
"Enc. bill.                    Missouri Paper Com."

Upon the receipt of this letter one of the plaintiff's representatives had an interview with the secretary of the Paper Company, in which the secretary stated that his company had decided not to receive the goods for fear that the shipment would be duplicated, as its order to the salesman was outstanding. Thereupon it was agreed between the parties that the Paper Company would store the goods in its warehouse for plaintiffs, and that it would buy them whenever it received satisfactory assurance that it would have no trouble over the second order. Ten or fifteen days after this agreement was made the Paper Company conveyed its property to defendant without notifying the plaintiffs that it would accept the twine.

In our opinion the ruling of the circuit court was wrong. Under no conceivable theory of the law as applicable to plaintiff's evidence was it right to take the case from the jury. Under the plaintiff's evidence there was no sale, and hence the title to the goods did not pass. The original order for the twine was not in writing, and no part of the purchase money

was paid. A part of the goods were received into the warehouses of the Paper Company, but under the plaintiff's evidence they were not accepted as a purchase. Under all the authorities there must be an acceptance, and delivery does not *per se* import an acceptance or sale. Gill v. Reed, 55 Mo. App. 246; Lovelace v. Stewart, 23 Mo. 348. But conceding for the argument, as counsel insist, that the letter of the Paper Company above set forth is a sufficient memorandum to satisfy the statute of frauds, yet the plaintiffs evidence tends to show that by agreement the contract of sale was rescinded and another agreement substituted. This new agreement was valid, for it is competent to rescind a written contract by parol. Chouteau v. Jupiter Iron Works, 94 Mo. 388. Did the new agreement vest the title to the twine in the Missouri Paper Company? We answer that it did not. The alleged agreement can not be construed as a conditional sale to be defeated and the goods returned on certain contingencies, but it merely gave to the Paper Company the optional right to purchase the twine upon the happening of a specified event. Until the event happened and the Paper Company manifested an intention to take the goods the title remained in plaintiffs. The authorities are one way on this question. As was stated by Judge Loomis (Hotchkiss v. Higgins, 52 Conn. 205), "there is a manifest distinction between an optional right in the party receiving the goods to purchase, and an optional right to return the same goods in whole or in part. In the former case the title will not pass until the option is determined, while in the latter it passes immediately to the party receiving the goods subject to be returned." To the same effect is the decision of this court in Strauss Saddlery Co. v. Kingman & Co., 42 Mo. App. 208.

The judgment of the circuit court will be reversed and the cause remanded. All concur.