## MONTICELLO STATE BANK *v.* KILLIAN

### Opinion delivered February 12, 1917.

1. SALES—SALE OF STALLION WITH RIGHT OF RETURN—DEATH OF STALLION—LOSS.—Defendants purchased a stallion from one C., the contract of sale providing that if the stallion did not prove to be a satisfactory foal-getter, the purchasers agreed to return him to the seller and receive another horse of equal value; the horse proved not to be satisfactory, but died before the purchasers returned him to the seller. *Held*, title had passed to the purchasers, subject to be divested in a certain way, and not having been so divested at the time of the horse's death, that the loss fell upon them.

2. SALES—AGREEMENT AS TO SELLER'S LIABILITY.—In the sale of personal property the seller has the right to define his liability by a special warranty and to provide for the measure of damages, or the manner of fulfilling his warranty.

3. CONTRACTS—BREACH—AGREEMENT AS TO REMEDIES.—When the parties to a contract agree upon the remedies that accrue for a breach of it, these remedies constitute the only relief that the purchaser has, and he will be governed by the stipulations contained in his contract.

Appeal from Miller Circuit Court, *Geo. R. Haynie*, Judge; reversed.

*Wm. J. Berne*, of Texas, for appellant.

1. The court erred in refusing to give the peremptory instruction asked by the plaintiff. (1) The animal when he died was the property of defendants, and his death did not relieve defendants from liability. The notes were purchased for value in reliance on the guaranty and contracts, under them there was no defense to the notes. The horse was sold under a contract of sale or return and the title passed on delivery with the right to return and exchange for another within the specified time; the horse died before any offer to return; the title was in defendants and they must bear the loss. There was no breach by Holbert, but if so the only remedy was the exchange for another horse. 138 S. W. 655; 157 *Id.* 390; 187 *Id.* 632; 188 *Id.* 17; 142 *Id.* 653; 159 *Id.* 1054; 2 Blackst. Com. 199; 17 Me. 344; 35 Am. Dec. 262; 117 Mass. 321; 20 Me. 317; 49 *Id.* 97; 100 Mass. 200; 52 Conn. 52; 7 Cow. 752; 35 Cyc. p. 290 (f); 200 U. S. 298; 38 W. Va. 312; 6 Am. & E. Enc. Law (2 ed.) 463, 473; 84 Neb. 464;

121 N. W. 582; 59 Am. Dec. 187; 127 S. W. 722; 12 Cush. 281; 16 Q. B. 493; 117 Eng. Rep. 968-9; 150 U. S. 312, 328; 35 Cyc. 343, 254; Tiedeman Sales, 321 § 213; Williston Sales, p. 377, § 273; 151 Fed. 896; 6 Eng. Rul. Cases, 575; 98 Ala. 176; 39 Am. St. 42; 7 *Id.* 42, and others.

2.  The sole objection to the horse was that he did not comply with the warranty as to his foal-getting quality. The only remedy provided was for his return within the time specified. Cases in S. W. Rep. cited *supra*.

3.  The case is fully developed and judgment should be entered here.

*J. M. Carter*, for appellees.

1.  Defendants literally complied with every condition of the contract—the only exception being their failure to return the horse for exchange within the time specified. But the horse was dead from natural causes and without any fault or neglect of appellees. Appellant was not an innocent purchaser. 79 Ark. 149; Acts 1913, 284, §§ 56, 83.

2.  By the death of the horse before the expiration of the time the law relieves defendants from anything more than paying the actual value of the horse; a cause over which they had no control preventing the return. Failure of consideration is a complete defense. 70 Mo. 272; 42 S. W. 1055. The contract here differs from that in 124 Ark. 535. Where no penalty is fixed by the contract the law fixes none. 27 Ark. 539; 19 Cyc. 710. This court will not extend the rule in 108 Ark. 325 as it would be unconscionable and harsh.

3.  The facts warrant the verdict. The facts are undisputed except as to the value of the horse and thus it became a question of law on all issues except as to value of the horse. The law so given by the court was correct. The evidence fully sustains the verdict.

STATEMENT BY THE COURT.

The Monticello State Bank sued M. W. Killian and others to recover on three promissory notes. The notes were all dated May 10, 1913, and were due respectively, on November 1, 1914, 1915 and 1916, and were payable to the order of A. B. Holbert. The notes contained a provision that upon the failure to pay any one of them or any installment of interest, the holder at his option might declare all of them due. One of the notes was for $500.00, and the two remaining ones were for $1,000.00 each. The notes were given to Holbert for the purchase price of a stallion. Among other provisions the contract for the purchase of the stallion contained the following:

"In selling stallion horse Wahrsager (2240) 5181, to a company at Fouke, Arkansas, and surrounding towns and their vicinities, it is especially understood by the purchasers who have subscribed the shares in the said horse Wahrsager that A. B. Holbert agrees to and binds himself to fulfil only the following guarantee on the said horse Wahrsager (2240) No. 5181.

"1st. Because I believe there are few truly sound stallions, A. B. Holbert gives notice that he guarantees no stallion sound, but guarantees all serviceably sound as serving stallions."

"2d. If the said horse should not prove himself a satisfactory foal-getter, the purchasers agree to return him to the barns of A. B. Holbert at Greeley, Iowa, and receive another horse of value equal at the time of exchange to that of the horse now sold, and A. B. Holbert hereby agrees that upon return of the said horse by the purchasers to his barns at Greeley, Iowa, he will give the purchasers a horse of then equal value in even exchange, and in no case can the purchasers exchange for a horse of less value. It is agreed that the purchasers may have the option of making exchange at the barn of A. B. Holbert at Texarkana, Arkansas, while said Holbert is maintaining a barn at said place."

The fourth clause of the contract provided that the obligations on the part of Holbert should continue and be in force until after April 1, 1915. In the fifth clause of the contract the purchasers agree to have the life of the horse insured for a period of not less than one year, for not less than $1,000.00, for which amount, in the event of the death of said horse during the next ensuing three years from the date of the contract, the said A. B. Holbert agrees to replace him with a horse of equal value at his barn at Greeley, Iowa, or at Texarkana, Arkansas. The contract was dated May 10, 1913, the day on which the notes were executed.

The horse was delivered to the defendants pursuant to this contract and remained in their possession until December 15, 1914, when he took sick with blind staggers and died about two hours later.

The defendants, pursuant to the terms of the contract, procured a policy of insurance on the horse for $1,000.00 which covered a period of time from the 19th day of May, 1913, to the 19th day of May, 1914.

The notes were transferred by Holbert to the Monticello State Bank for value received on October 7, 1915. The notes were endorsed by A. B. Holbert and it was represented to the bank by his agent that the signers of the notes were solvent and that the notes could be collected. The bank knew that the notes were given for the purchase price of the stallion and the contract was shown to it before the notes were purchased.

The defendants testified that they purchased the horse for a breeding stallion and that he was almost wholly worthless for that purpose. They said the reason they did not send the horse back the first year was because they wanted to give him a fair trial.

The jury returned a verdict for the defendant and the plaintiff has appealed.

HART, J. (after stating the facts). The court submitted the case to the jury on the theory that the sale of the stallion was a sale on trial or a delivery with the

right to buy within a stipulated time if the defendants liked the horse, and that until the expiration of the limited time the title and risk was in the vendor.

On the other hand it is contended that the delivery of the stallion under the agreement amounted to what is called a contract of sale or return and that in such cases the title vests immediately in the defendants and that the loss of the horse, under the facts of this case, must fall upon the defendants. If the transaction is a sale on trial, it is said to be a sale on condition precedent; that is, the title does not pass until the condition described is fully performed although the possession is delivered.

Such transaction is rather a bailment with the option to buy than a sale, and the title does not become vested in the purchaser until he exercises his option to purchase. *Haddon* v. *Finley*, 125 Ark. 529, 189 S. W. 353; *Ward Furniture Manufacturing Co.* v. *Isbell*, 81 Ark. 549. On the other hand in cases of a purchase with a right of return, the title and risk immediately pass to the purchaser. If it is a sale or return, it is said to be a sale on condition subsequent; that is, the title passes with the possession but subject to be divested if the condition is not performed and the property is returned. In this class of cases the title passes by the delivery of possession subject to defeasance by the exercise of the option reserved to rescind and return. *Osborne* v. *Francis*, 38 W. Va. 312, 45 Am. St. Rep. 859; *Guss* v. *Nelson*, 200 U. S. 298; *Sturm* v. *Boker*, 150 U. S. 312; 35 Cyc. 290; Tiedeman on Sales, sec. 213; 1 Wharton on Contracts, sec. 590; Benjamin on Sales, Bennett's 7th Ed. American Note, 605.

In the contract under consideration, the transaction is called in one place a purchase and sale. The defendants are spoken of throughout as the purchasers. In the second clause of the contract it is expressly provided that if the horse should not prove himself a satisfactory foal-getter the purchasers agree to return him to the seller and receive another horse of equal value. By the fifth clause of the contract it is provided that the pur-

chasers shall procure a policy of insurance on the stallion for a period of not less than one year for not less than $1,000.00, for which amount, in the event of the death of the horse during the next ensuing three years from date, the seller agrees to replace him with a horse of equal value.

(1)    The terms of the contract in question show the transaction to be a sale or return. Therefore the title to the horse passed to the defendants subject· to be divested out of them and revested in the seller by the return of the horse to the seller in accordance with the terms of the contract. The horse died before the defendants exercised their right to return him under the contract and the loss must fall on them. 35 Cyc. 254; *Strauss Saddlery Co.* v. *Kingman & Co.*, 42 Mo. App. 208, and *Sturm* v. *Boker*, 150 U. S. 312.

It is claimed that this construction of the contract renders it harsh and unjust in its terms. It is sufficient for us to say that the parties have so willed it. Under the law the parties were competent to make the contract in that manner and if the terms of the contract are sufficient to show they did so their stipulation is the law of the case. Courts can only enforce contracts which may be lawfully made according to their terms. They are not at liberty to pass upon the justice or injustice of the actions of parties who are capable of contracting for themselves. The construction we have given the contract is borne out by the fifth clause of it. In it the purchasers agree to have the life of the said stallion insured for a period of not less than one year for not less than $1,000.00, for which amount, in the event of the death of said horse during the next ensuing three years from date, said A. B. Holbert agrees to replace him with a horse of equal value at his barn.

The parties are presumed to have understood the terms of the contract. Thus the parties themselves recognized that the purchasers would be liable for the purchase price of the horse in case he died. This is borne out by the fact that they provide that in case they should insure him as provided in the fifth clause of the

contract, that the seller should give them another horse in case he died within three years. This of itself shows that the purchasers realized that they must pay for the horse unless they exercised their option to return him in the manner provided for in the contract.

It follows that the court erred in not instructing a verdict for the plaintiff as requested by it and for that error the judgment must be reversed. Inasmuch, however, as the case has been fully developed and the question of the liability of the defendant is entirely one of law, it will not be necessary to remand the case for a new trial. Judgment will be entered here for the balance due on the note amounting to $2,450.00 with interest thereon from May 10, 1913, at the rate of 8% per annum until paid.

Hart, J. (On rehearing.) Counsel for the defendants in their petition for rehearing insists that the court overlooked the theory on which the lower court submitted the case to the jury.

The trial court told the jury that the defendants contended that the horse in question was worthless as a breeding stallion, the purpose for which they say that he was purchased, and that therefore, the consideration for which the notes sued on were executed had wholly failed. The court further told the jury that if it found from a preponderance of the evidence that the horse was worthless as a breeding stallion, its verdict should be for the defendants.

(2) Counsel for the defendants insists that this instruction was correct and to sustain his position cites section 28 of the Uniform Negotiable Instrument Act, passed by the Legislature of 1913. Acts of 1913, p. 260. The section relied on provides that absence or failure of consideration is a matter of defense against any person, not a holder in due course, and partial failure of consideration is a defense *pro tanto* whether the failure is an ascertained and liquidated amount or otherwise. This section of the statute is but declaratory of the law as it existed before the statute was passed. *Webster* v. *Carter*, 99 Ark. 458. It has no application, however,

under the facts of this case. In the sale of personal property the seller has a right to define his liability by a special warranty and to provide for the measure of damages or the manner of fulfilling his warranty. This was done in the present case by the seller. Such a contract is valid at common law and there is nothing in our statute forbidding it. The special guarantee in the present case is that if the horse should not prove himself a satisfactory foal-getter, the purchasers agree to return him to the barn of A. B. Holbert at Greely, Iowa, and to receive another horse of equal value. The horse died before he was returned.

(3) Counsel for the defendants say that he died through no fault of theirs. Be that as it may, they did not return the horse as provided in the contract. However harsh the terms of the contract may appear to be, it must be remembered that the parties were capable of contracting and the contract between them was a lawful one. The parties it to must, therefore, abide by its terms. Contracts containing similar provisions to this have been before this court before and it has been uniformly ruled that when the parties to a contract agree upon the remedies that accrue for a breach of it, these remedies constitute the only relief that the purchaser has and he must be governed by the stipulations contained in his contract. *Harrison* v. *Walker*, 124 Ark. 555, 188 S. W. 17; *Crouch* v. *Leake*, 108 Ark. 322; *Holland Banking Co.* v. *Haynes*, 125 Ark. 10, 187 S. W. 632.

It necessarily follows that the court erred in giving the instruction referred to. The point discussed by us in our former opinion contains the real question of law in the case and we adhere to what we there said with reference to it.

The motion for rehearing will be denied.